342 S.E.2d 120

**Rodger ACORD**

v.

**Jerry HEDRICK, Warden, West Virginia Penitentiary**

No. 16963.

Supreme Court of Appeals of West Virginia.

March 11, 1986.

Lee H. Adler, Beckley, for appellant.

Bethany Boyd, Asst. Atty. Gen., Charleston, for appellee.

NEELY, Justice:

On 13 January 1983 a Raleigh County jury found Rodger Acord guilty of first-degree sexual assault and subsequently the trial court sentenced him to ten to twenty years in the West Virginia Penitentiary. Mr. Acord has petitioned this Court for a writ of habeas corpus in which he alleges several errors of constitutional dimensions in the proceedings below. We find no error warranting an award of a writ.

The heart of Mr. Acord's petition is his claim that the trial court wrongly permitted a privately retained lawyer to aid the State in its prosecution against him. Mr. Acord contends that: the private prosecutor "overmatched" his court appointed counsel; as a result of this "overmatch" his trial was riddled with a spate of reversible errors; and, he was deprived of effective assistance of counsel.

### I

The victim's family hired Warren A. Thornhill, III to help prosecute the case against Mr. Acord. With the aid of the Prosecuting Attorney of Raleigh County, K. Bruce Lazenby, Mr. Thornhill faced the team of James R. Sheatsley and Norman Knapp. Although this case was Mr. Sheatsley's first criminal trial, his co-counsel, Mr. Knapp had been a circuit judge in this State's Tenth Judicial Circuit for 16 years. When we view defense counsel as a team, we must conclude that Mr. Acord had counsel with considerable trial experience working on his behalf. Furthermore, we cannot agree with Mr. Acord's assertion that Mr. Knapp's assistance to Mr. Sheatsley was mere "window dressing." The record shows that Mr. Knapp helped prepare the case, was active at trial, cross-examined witnesses, and made a closing argument. A mere imbalance between defense counsel and prosecution does not invalidate a criminal trial. Due process of law does not require that every criminal case be prosecuted by a Thomas Dewey, defended by a Clarence Darrow, and tried before a John Marshall.[1]

### A.

■ This Court has acknowledged that the trial court has a responsibility to see that a "prosecutorial overmatch" does not deprive a criminal defendant of due process of law, but we have also held that defense counsel's inexperience alone is not enough to prove "overmatch." The gravamen of any "prosecutorial overmatch" claim is proof of ineffectiveness of counsel as determined by reference to the trial record. *State v. Pratt*, 161 W.Va. 530, 535, 244 S.E.2d 227, 230 (1978). The trial record does not disclose that Mr. Sheatsley or Mr. Knapp allowed the prosecution to introduce incompetent evidence of a prejudicial nature, or that they unwittingly allowed the prosecution to achieve any other undue advantage. On the contrary, the record shows that Mr. Sheatsley and Mr. Knapp gave Mr. Acord a vigorous and well conceived defense.

■ "Ineffectiveness of counsel" is not a charge easily shown. Proof requires

1. *See* Macklin Fleming, *The Price of Perfect Justice* 5 (1974).

more than a second guessing of counsel's trial conduct. As we have stated:

"Where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused."

Syl. Pt. 21, *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974). Similarly, the United States Supreme Court has adopted a "reasonably effective assistance" standard that requires that a defendant first show that his counsel's performance was deficient and prejudiced his defense before they will find that counsel was ineffective. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Courts will not apply this standard in hindsight. The Supreme Court has held:

A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, *a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance;* that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." [Citation omitted] There are countless ways to provide effective assistance in any given case. *Even the best criminal defense attorneys would not defend a particular client in the same way.*

*Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065–2066. Even in hindsight, Mr. Acord's counsel did a competent job. Mr. Acord has not shown that he has been the victim of ineffective counsel much less the victim of "prosecutorial overmatch."

## B.

To buttress his claim, Mr. Acord points to several specific examples of prosecutori-

al and defense conduct. None of his examples shows "overmatch" or ineffective assistance of counsel.

■■■ Mr. Acord suggests that Mr. Thornhill improperly questioned witnesses about items stolen from the victim's house on the night of the assault. But, this testimony was not used to show the defendant's propensity toward criminality, but rather it served to establish the identity of the person charged with the commission of the crime, and thus it is an exception to the collateral crime rule. *State v. Gum*, 172 W.Va. 534, 309 S.E.2d 32, 41 (1983); Syl. pt. 12, *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974). Nor was it prejudicial to introduce a facsimile of a ring that was stolen during the robbery. In a companion case involving Mr. Acord's brother, we stated:

When an accurate physical replica of an unavailable object is helpful in clarifying a witness's testimony, that replica may, in the discretion of the trial court, be introduced into evidence.

Syl. pt. 2, *State v. Acord*, 175 W.Va. 611, 336 S.E.2d 741 (1985). The evidence introduced in both of these instances was admissible. Accordingly, the introduction of this evidence is not a reversible error, and does not suggest that the prosecution took unfair advantage of the defense.

■■■ Mr. Acord suggests that the prosecutors were clearly overreaching and taking advantage of petitioner's trial counsel when they questioned the State's key witnesses Denver Bailey and Robert Bolen. Mr. Bailey and Mr. Bolen testified that they drove to the victim's house with Mr. Acord on the night of the rape. During their testimony the prosecution adduced that as a result of the incidents of that night: 1) Mr. Bailey had been charged with and had pled guilty to grand larceny; and, 2) Mr. Bolen had been charged with a criminal offense. Although an accomplice's guilty plea cannot be used to show the defendant's guilt by association, it is admissible to show the witness's credibility. *State v. Caudill*, 170 W.Va. 74, 289 S.E.2d 748, 755 (1982) (guilty plea made by accom-

plice cannot be used in an attempt to show guilt by association; testimony having that intent and so limited as to achieve that intent is error). The trial court gave the jury instructions about these limitations on the accomplices' testimony. Therefore, neither the introduction of Mr. Bailey's guilty plea, nor the introduction of the charge against Mr. Bolen was an error.

■ Mr. Acord also maintains that the prosecutor overreached by questioning of the petitioner about what he said upon his arrest and then introducing rebuttal testimony from Trooper Hylton. The prosecution questioned Mr. Acord about statements he made after Trooper Hylton read him his Miranda warnings. Mr. Acord testified that at the time of his arrest: "I told him I didn't know anything about any crime that had been committed down there." (Tr. 354). Subsequently Trooper Hylton testified:

> After picking the defendant up in Augusta, Georgia, the first thing I did to him was advise him of his constitutional rights, in case there was anything said while we were in transit. Mr. Acord advised me that he had an attorney, and had also had been advised, or arrangements had been made for an attorney in Beckley, West Virginia, and he had nothing to say about the matter.

(Tr. 362–3). Regarding this testimony, the court instructed the jury. "The jury is to understand that this goes not as an incriminatory statement, but merely to impeach a prior statement made by the witness in this case, which was the defendant." Mr. Acord contends that this was an unfair use of his post-arrest silence. Mr. Acord is correct that the prosecution may not use a criminal defendant's post-arrest silence to impeach the defendant's later testimony. *State v. Boyd,* 160 W.Va. 234, 233 S.E.2d 710, 716 (1977); *Doyle v. Ohio,* 426 U.S. 610, 618–619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976). But in *Anderson v. Charles,* 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980), the Supreme Court held it is not an unfair use of silence to cross-examine a criminal defendant concerning prior inconsistent statements made after receiving Miranda warnings. In the present case, the questions were not designed to draw meaning from silence, but rather they were to elicit meaning from a prior inconsistent statement and thus, were permissible. The cross examination and rebuttal testimony did not constitute overreaching by the prosecutor.[2]

■ Mr. Acord argues that "State's Instruction No. 9," which directed the jury that they were permitted to find that a rape had occurred, even if the victim's testimony to that effect was uncorroborated, was improper. In particular, Mr. Acord points out that the third part of the instruction does not conform to the evidence.[3] Mr. Acord never contradicted the victim so the instruction was inapplicable. But when we consider this error in the context of the entire record, we cannot see how any prejudice may have resulted. The other instructions, and in particular Defendant's Instruction No. 3" which informed the jury that they could not arbitrarily disregard the defendant's testimony, render the surplus language in State's Instruction Number 9 harmless.

■ Mr. Acord points out two other incidents that he claims were examples of "overmatch." First, during the examina-

---

2. In a post-argument letter, Mr. Acord suggests that *Wainwright v. Greenfield,* 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986) expands *Doyle v. Ohio, supra,* and renders the prosecution's cross-examination unconstitutional. All *Wainwright v. Greenfield, supra,* adds to *Doyle* is that a prosecutor may not use a defendant's post *Miranda* silence to impeach a defendant's plea of insanity. 474 U.S. at 296, 106 S.Ct. at 641, 88 L.Ed.2d 623. *Wainright* is inapposite here because in this case the prosecutor questioned the defendant about his prior inconsistent statements, and not his post-arrest silence.

3. The third part of "State's Instruction No. 10" reads: "... and if such evidence considered in connection with all of the evidence in this case, both that for the State and for the defendant, convinces you beyond a reasonable doubt that Roger Dale Acord is guilty even though the defendant testified in direct contradiction to [the victim], you may find Roger Dale Acord guilty." [Victim's name omitted by the Court].

tion of witnesses, the prosecution raised the fact that Mr. Acord had to be returned from Georgia to West Virginia to face prosecution. This testimony was not used to show the defendant's "flight" or his guilty conscience or knowledge. Accordingly the limitations that *State v. Payne,* 167 W.Va. 252, 280 S.E.2d 72 (1981) places on such testimony are inapplicable in the present case.

■ Second, the prosecution cross-examined Mr. Acord about whether co-defendants Sam Acord (his brother) or Donald Acord (his uncle) were going to appear as witnesses. Furthermore, in his closing argument, Mr. Thornhill argued that if Sam and Donald Acord had wanted to appear and offer exculpatory testimony, they could have. Mr. Thornhill added that they did not appear, that they were charged under the same indictment, and that they had chosen to have separate trials. Mr. Acord contends that this was an error because it is improper for the prosecution to call a witness who is a co-defendant and who the prosecution knows will take the Fifth Amendment. Accordingly, he argues, it is also improper to raise the issue of the non-appearance of such a "co-defendant witness." The defense counsel made no objection at trial, thereby failing to preserve the point on appeal.[4] But we note that Mr. Thornhill's comment in his closing argument on Mr. Acord's failure to call favorable witnesses is permissible in some circumstances. *United States v. Wright,* 573 F.2d 681 (1st Cir.1978) *cert. denied,* 436 U.S. 949, 98 S.Ct. 2857, 56 L.Ed.2d 792 (1978).

## II

■ Mr. Acord also contends that the rape victim's family's retention of a private prosecutor was *per se* improper. Although the right to a private prosecutor is not absolute, the retention of a private prosecutor is perfectly just, legal, and fair in many cases. *W. Va. Code* 7–7–8 [1972] specifically provides that:

"No provision of this section shall be construed to prohibit the employment by any person of a practicing attorney to assist in the prosecution of any person or corporation charged with a crime."

The statute preserves, although it does not guarantee, the common law right to employ a private prosecutor. The ultimate responsibility for permitting the participation of a private prosecutor and for supervising his conduct rests with the trial judge. *State v. Atkins,* 163 W.Va. 502, 506, 261 S.E.2d 55, 58 (1979), *cert. denied* 445 U.S. 904, 100 S.Ct. 1081, 63 L.Ed.2d 320 (1980).

■ At the appellate level, a complaint against a private prosecutor must be bottomed on an instance of the private prosecutor's misconduct that in some way prejudiced the defendant.[5] *State v. Riser,* 170 W.Va. 473, 294 S.E.2d 461, 466 (1982) (criminal defendant must show specific impropriety on the part of private prosecutor). Mr. Acord has failed to establish any prejudice resulting from Mr. Thornhill's prosecuting the case that would rise to a constitutional level.

## III

■ Mr. Acord contends that the trial court committed reversible error by permitting "Defendant's Instruction No. 21" concerning Mr. Acord's alibi to go to the jury. But the record shows that the instruction was proper because it avoided placing a burden upon the defendant to prove his alibi defense sufficiently to create a reasonable doubt in the mind of the jury as to his guilt. These types of instructions were struck down in *State v. Kopa,* 173 W.Va.

---

4. Unless an objection is raised at the trial court, this Court will presume all matters therein to have been proper. *See e.g., State v. Clements,* 175 W.Va. 463, 334 S.E.2d 600, 608 n. 4 (1985).

5. An example would be where the retention of a particular private prosecutor would violate the conflict of interest provisions of the *West Virginia Code of Professional Responsibility. State ex rel. Koppers v. Intern. Union, etc.,* 171 W.Va. 290, 298 S.E.2d 827 (1982).

43, 311 S.E.2d 412 (1984). "Defendant's Instruction No. 21" did not shift the burden of persuasion to the defendant to prove his alibi.[6] Rather, the instruction substantially equivalent with the standards set out in *Frye v. Procunier*, 746 F.2d 1011 (4th Cir. 1984) (an instruction telling the jury that defendant did not have to prove his alibi beyond a reasonable doubt or even by a preponderance of the evidence, but had only to introduce evidence which created a reasonable doubt regarding guilt was not an impermissible shift to defendant of prosecution's burden of proving every element of crime charged beyond a reasonable doubt). Accordingly, the instruction was proper.

Mr. Acord argues that the court should not have submitted an interrogatory to the jury asking them whether the defendant "committed a felony with the use, presentation or brandishment of a firearm." Because the jury answered "yes" to this interrogatory, Mr. Acord was found ineligible for probation pursuant to *W. Va. Code*, 62–12–2(b) [1981]. Mr. Acord was a principal in the first-degree, and the victim testified that all three assailants sexually assaulted her, and that a gun was held to her head *at all times* during the assaults. *W. Va. Code*, 62–12–2(b) [1981] does not require that there be evidence that each principal in the first-degree involved in a felony held a gun at all times. As long as there is evidence from which the jury can logically infer that the principal used a gun in the commission of the felony, the principal is subject to the provisions of *W. Va. Code* 62–12–2(b) [1981].

Finally, we find that Mr. Acord's assertion that the State withheld exculpatory material and key witnesses' criminal records to be frivolous. The record shows that the State provided Mr. Bolen's and Mr. Bailey's criminal records to the defense counsel. As soon as the defense counsel requested copies of the statements Robert Bolen made to Trooper Hylton, the prosecution made them available. Furthermore, they were available before the prosecution's cross examination of Trooper Hylton and Robert Bolen. Because Mr. Acord failed to object at the trial level, and there was no showing of surprise or prejudice, any error is waived. *State v. Moran*, 168 W.Va. 688, 285 S.E.2d 450, 453 (1981).

In short, Mr. Acord has not shown how the staffing arrangements for either the defense or the prosecution in this case has caused a deprivation of his due process rights. Mr. Acord has not shown that his counsel was ineffective, that Mr. Thornhill engaged in some type of prosecutorial misbehavior or that any reversible error was committed at the trial level. Without a showing of actual prejudice we cannot raise Mr. Acord's "overmatch" argument, or any of his other alleged errors, to constitutional dimension.

Accordingly, the writ of habeas corpus for which petitioner prays is denied. Mr. Acord's petition is hereby denied.

Writ denied.

**6.** Mr. Acord's alibi instruction ("Defendant's Instruction No. 21"), reads:

"The Court instructs the Jury that the defense in this case is what is called in law an alibi and that such defense does not require a preponderance of the evidence and if the Jury believes from all the evidence and circumstances in this case that the Defendant, Roger Dale Acord, was at Gastonia, North Carolina, at the time that the crime was alleged to have been committed, then the Court instructs the Jury that they should find the defendant not guilty and the Jury is further instructed that if from the whole evidence they should entertain a reasonable doubt as to whether the prisoner, Roger Dale Acord, was at Bolt, Raleigh County, West Virginia, at the home of [the victim] at the time of the alleged crime that under the law it is their sworn duty to give Roger Dale Acord the benefit of such doubt and find him not guilty." [Victim's name omitted by the Court].