364 S.E.2d 824

**STATE of West Virginia**

v.

**Michael W. GRUBBS.**

**No. 16988.**

Supreme Court of Appeals of West Virginia.

Dec. 21, 1987.

Silas B. Taylor, Deputy Atty. Gen., for plaintiff.

Frank W. Helvey, Jr., Public Legal Services, Charleston, for defendant.

MILLER, Justice:

In this appeal from a forgery conviction in Wood County,[1] the defendant contends that the trial court erred in admitting his oral confession, that his handwriting samples should not have been admitted, that a bad alibi instruction was offered, and that the prosecutor made certain prejudicial remarks in his closing argument.

### I.

At the time of his oral confession on June 17, 1982, the defendant was being detained in the Kanawha County jail in connection with an unrelated forgery indictment returned in Kanawha County upon which counsel had been retained. He had been scheduled to appear before a magistrate that day for an initial appearance on additional forgery charges. He had not yet obtained counsel on these charges. Two state troopers who were investigating still other forgeries possibly committed by the defendant, including the Mason County charge, went to the magistrate's office to obtain handwriting samples from the defendant. Because no deputy sheriff was available, the magistrate or a bailiff asked the two state police officers to bring the defendant from the jail. The defendant's girlfriend was also at the magistrate's office and accompanied the officers.

After meeting the defendant at the jail, the officers advised him they were investigating several other forgeries in which he was a suspect and that they wanted to talk to him and obtain handwriting samples. The defendant, according to the officers, indicated his willingness to talk to them. He also stated that he had fired his lawyer on the Kanawha County indictment and was going to ask for appointed counsel.[2]

1. The indictment in this case was returned in the Circuit Court of Mason County. However, the defendant was granted a change of venue and the trial took place in Wood County.

2. The defendant had originally been appointed an attorney on the forgery indictment, but had discharged him and had retained counsel with whom he had also became dissatisfied and had dismissed.

While at the magistrate's office the defendant signed a pauper's affidavit to have an attorney appointed for him on the Kanawha County charges.

After his appearance in magistrate court, the troopers took the defendant and his girlfriend to the South Charleston State Police Headquarters. There he was advised of, and then executed a waiver of, his *Miranda* rights.[3] He then orally admitted forging the checks in the present case. Because there were other checks in addition to the ones involved in this case, the officers had the defendant give numerous handwriting samples with regard to a variety of checks in their possession. This process consumed most of the afternoon, at which point he was returned to the Kanawha County jail.

The following day, June 18, he was taken again to the South Charleston State Police headquarters where additional checks were shown to him and handwriting samples taken. Before this process began, he was again given his *Miranda* warnings and signed a written waiver of his rights. Four of these handwriting samples were introduced into evidence at the trial in the present case.

The defendant, at the *in camera* hearing, denied making any oral incriminating statement and also claimed that he had repeatedly asked for a lawyer. He also claimed that the officers had promised him a favorable plea bargain and an opportunity to have some time alone at a local motel with his girlfriend if he would give handwriting exemplars. All of this was denied by the officers. The defendant's girlfriend, who was present on both days during most of the period that the defendant was giving the samples, was not called to testify at the suppression hearing. She testified at trial that she did not listen carefully to the police questioning and was unable to remember much of what had occurred since more than two years had elapsed by the time of trial. The circuit court found the oral inculpatory statements and the samples to be voluntary and, therefore, admissible.

## II.

The defendant contends that the delay in taking him to a magistrate after his initial oral confession on June 17 should vitiate the handwriting exemplars taken the following day, citing *State v. Persinger*, 169 W.Va. 121, 286 S.E.2d 261 (1982) and its progeny.[4] The State responds that *Persinger* relates to the validity of a confession where there has been an unreasonable delay in taking the accused before a magistrate as required by W.Va.Code, 62–1–5.[5] It contends, and we agree, that handwriting samples or exemplars have long been regarded as physical evidence and are not testimonial. Consequently, they are outside the Fifth Amendment protection against self-incrimination as indicated by this passage from *United States v. Euge*,

> " 'The delay in taking a defendant to a magistrate may be a critical factor [in the totality of circumstances making a confession involuntary and hence inadmissible] where it appears that the primary purpose of the delay was to obtain a confession from the defendant.' Syllabus Point 6, *State v. Persinger*, [169] W.Va. [121], 286 S.E.2d 261 (1982), as amended."

---

**3.** He also executed a specially drawn waiver indicating that before he signed the pauper's affidavit and requested counsel on the unrelated Kanawha County forgery charges, he had agreed to talk with the police officers and give handwriting exemplars.

**4.** Syllabus Point 6 of *Persinger* states: "The delay in taking the defendant to a magistrate may be a critical factor where it appears that the primary purpose of the delay was to obtain a confession from the defendant." *See also State v. Dyer*, 177 W.Va. 567, 355 S.E.2d 356 (1987); *State v. Bennett*, 176 W.Va. 1, 339 S.E.2d 213 (1985); *State v. Hickman*, 175 W.Va. 709, 338 S.E.2d 188 (1985); *State v. Guthrie*, 173 W.Va. 290, 315 S.E.2d 397 (1984).

This syllabus point has been modified by the bracketed language in Syllabus Point 1 of *State v. Guthrie:*

**5.** The relevant portion of W.Va.Code, 62–1–5, relied on in *Persinger* is: "An officer making an arrest under a warrant issued upon a complaint, or any person making an arrest without a warrant for an offense committed in his presence, shall take the arrested person without unnecessary delay before a justice [magistrate] of the county in which the arrest is made."

444 U.S. 707, 713, 100 S.Ct. 874, 879, 63 L.Ed.2d 141, 148–49 (1980):

"In *Holt v. United States*, 218 U.S. 245, 252–253, 54 L.Ed. 1021, 31 S.Ct. 2[6] (1910) (Holmes, J.), the Court found that the common-law evidentiary duty permitted the compulsion of various forms of physical evidence. In *Schmerber v. California*, 384 U.S. 757, 764, 16 L.Ed.2d 908, 86 S.Ct. 1826 [1832] (1966), this Court observed that traditionally witnesses could be compelled, in both state and federal courts, to submit to 'fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture.' *See also United States v. Wade*, 388 U.S. 218, 18 L.Ed.2d 1149, 87 S.Ct. 1926 (1967). In *Gilbert v. California*, 388 U.S. 263, 266–267, 18 L.Ed.2d 1178, 87 S.Ct. 1951 [1953–1954] (1967), handwriting was held, 'like the ... body itself' to be an 'identifying physical characteristic,' subject to production. In *United States v. Dionisio*, 410 U.S. 1, 35 L.Ed.2d 67, 93 S.Ct. 764 (1973), and *United States v. Mara*, 410 U.S. 19, 35 L.Ed.2d 99, 93 S.Ct. 774 (1973), this Court again confirmed that handwriting is in the nature of physical evidence which can be compelled by a grand jury in the exercise of its subpoena power."

*See*, Annot., 43 A.L.R.3d 653 (1972). We have recognized this principle as applied to a related type of evidence, i.e., voice samples, and have concluded in *State v. Hutchinson*, 176 W.Va. 172, 178, 342 S.E.2d 138, 144 (1986), that a police demand for such sample after arrest "does not implicate the privilege against self-incrimination. *United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973)." [6]

The defendant misconceives the nature of our rule in *Persinger*. It is designed to implement our prompt presentment statute, W.Va.Code, 62–1–5, which requires an individual to be promptly taken before a neutral magistrate after arrest. This is to insure that the accused is fully informed of his various constitutional and statutory rights.[7]

Where, as here, the issue involves a matter that has not been given constitutional or statutory protection relating to the prompt presentment statute, *Persinger*'s dictates do not apply.[8] Consequently, we

---

**6.** In several cases, we found handwriting samples to be inadmissible as they were not taken under the supervision of a judge as required by W.Va.Code, 57–2–1. *State v. Barker*, 169 W.Va. 620, 289 S.E.2d 207 (1982); *State v. Riley*, 169 W.Va. 354, 287 S.E.2d 502 (1982); *State v. Shade*, 119 W.Va. 600, 195 S.E. 338 (1938). This requirement has been deleted in the 1981 amendment to W.Va. Code, 57–2–1.

**7.** We recognized these rights in *Persinger*, 169 W.Va. at 134–35, 286 S.E.2d 269–70, as follows:

"By statute, our mandated preliminary appearance before a magistrate serves other vital purposes in addition to informing the defendant of his right against self-incrimination and his right to counsel. The magistrate is required to 'in plain terms inform the defendant of the nature of the complaint against him.' W.Va.Code, 62–1–6. Moreover, the defendant must be informed 'if the offense is to be presented for indictment, of his right to have a preliminary hearing.' W.Va.Code, 62–1–6. The defendant at this initial appearance must be provided 'reasonable means to communicate with an attorney or with at least one relative or other person for the purpose of obtaining counsel or arranging bail.' W.Va. Code, 62–1–6. Finally, it is at this initial appearance that the defendant is entitled to obtain bail."

We also stated in Note 13 of *Persinger*, 169 W.Va. at 135, 286 S.E.2d at 270, that "[t]hese statutory rights are also embodied in Rule 5 of the Rules of Criminal Procedure...."

**8.** No argument is made that the defendant's oral confession should have been suppressed for a violation of the prompt presentment statute, as the defendant recognizes this argument is foreclosed by Syllabus Point 4 of *State v. Humphrey*, 177 W.Va. 264, 351 S.E.2d 613 (1986): "Ordinarily the delay in taking an accused who is under arrest to a magistrate after a confession has been obtained from him does not vitiate the confession under our prompt presentment rule." The defendant does appear to argue that there was no probable cause to hold the defendant and interrogate him on the Mason County charges. Consequently, an illegal arrest occurred under the Fourth Amendment which, under *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), and *State v. Stanley*, 168 W.Va. 294, 284 S.E.2d 367 (1981), should vitiate his oral confessions and handwriting exemplar. This issue was not raised below and we decline to give it any extended discussion. We are unable to perceive a Fourth

conclude that police-requested handwriting samples do not implicate the Fifth Amendment right against self-incrimination nor are they subject to being vitiated by the prompt presentment statute, W.Va.Code, 62–1–5.

## III.

■ Defendant contends that trial counsel was ineffective because he failed to object to an alibi instruction that is claimed to be unconstitutional under *State v. Kopa*, 173 W.Va. 43, 311 S.E.2d 412 (1983).[9] When we review the pertinent portion of this instruction,[10] we find that it does not shift the burden of proof. As the State correctly points out, it is on a par with an alibi instruction we approved in Note 6 of *Acord v. Hedrick*, 176 W.Va. 154, 161, 342 S.E.2d 120, 126 (1986),[11] and is less offensive than the alibi instruction approved by the Fourth Circuit post-*Adkins* in *Frye v. Procunier*, 746 F.2d 1011, 1012 (4th Cir. 1984), *cert. denied*, 472 U.S. 1010, 105 S.Ct. 2707, 86 L.Ed.2d 723 (1985).[12] We conclude that this point is without merit.

## IV.

A further and more serious point of error relates to certain remarks made by the prosecuting attorney in his closing argument. The defendant refers us to *United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), where the Supreme Court in its supervisory role over federal courts discussed this problem at some length.

The defendant in *Young* had been accused of various federal offenses arising from false certificates in connection with sales of crude oil. The defense counsel had in his closing remarks impugned the prosecutor's motives by stating the prosecution was instituted in bad faith, that the prosecutor had attempted to poison the jurors' minds, and that his conduct was reprehensible. Defense counsel also pointed to the prosecutor's table and said that there was not a person in the courtroom, including those at the table, who thought the defendant intended to defraud anyone.

The prosecutor, after referring to some of the evidence, responded by stating that

Amendment violation where the defendant is already in lawful custody on another unrelated charge. *See, State v. Clawson*, 165 W.Va. 588, 270 S.E.2d 659, 668–69 (1980).

9. *Kopa* dealt with an alibi instruction from *State v. Alexander*, 161 W.Va. 776, 245 S.E.2d 633 (1978), which had been declared unconstitutional as burden shifting in *Adkins v. Bordenkircher*, 674 F.2d 279 (4th Cir.), *cert. denied*, 459 U.S. 853, 103 S.Ct. 119, 74 L.Ed.2d 104 (1982), *overruled on other grounds, Meadows v. Holland*, 831 F.2d 493 (4th Cir.1987). Its language was:

"The Court instructs the jury that where the State of West Virginia has established a prima facie case and the defendant relies upon the defense of alibi, the burden is upon the defendant to prove it, not beyond a reasonable doubt, nor by a preponderance of the evidence, but by such evidence, and to such a decree of certainty, as will, when the whole evidence is considered, create and leave in the mind of the jury a reasonable doubt as to the guilt of the defendant." 173 W.Va. at 47–48, 311 S.E.2d at 417.

10. State's Instruction No. 2 provides:
"As the State bears the burden of proving each and every element of the crimes charged, including the presence of the Defendant, beyond a reasonable doubt, the Defendant is not required to sustain the defense of alibi by any

particular degree of proof. It is sufficient if such evidence of alibi, when considered along with all of the evidence in this case, creates in the mind of each juror a reasonable doubt as to his guilt."

11. In relevant part, it stated:
"The Court instructs the Jury that the defense in this case is what is called in law an alibi and that such defense does not require a preponderance of the evidence and if the Jury believes from all the evidence and circumstances in this case that the Defendant, Roger Dale Acord, was at Gastonia, North Carolina, at the time that the crime was alleged to have been committed, then the Court instructs the Jury that they should find the defendant not guilty. . . ."

12. The alibi instruction in *Frye* read:
"The court instructs the jury that the defendant need not prove his alibi beyond a reasonable doubt or even by a preponderance of the evidence. The defendant must only introduce evidence which, when considered with the whole evidence, creates a reasonable doubt regarding his guilt. If, after considering all the evidence, you have a reasonable doubt that the defendant was present at the time and place the alleged offenses were committed, you shall find him not guilty of all offenses."

since personal impressions were being brought into the case, he had concluded that the defendant did commit fraud. He then proceeded to comment on the defendant's conduct as lacking honor and integrity, and exhorted the jurors to do their duty under the law.

Neither party had objected to these remarks, but the Court of Appeals reversed the case based on the plain error doctrine in Rule 52(b) of the Federal Rules of Criminal Procedure.[13] The Supreme Court in a 5–4 opinion reversed, holding that the plain error test is only utilized for "those errors that 'seriously affect the fairness, integrity or public reputation of judicial proceedings.' *United States v. Atkinson*, 297 U.S. [157] at 160 [80 L.Ed. 555, 557, 56 S.Ct. 391, 392 (1936)]."

It is clear, however, that the Supreme Court did not sanction such conduct and made reference to the ABA Code of Professional Responsibility, DR 7–106(C),[14] as well as from the ABA Standards for Criminal Justice 3–5.8 (2d ed. 1980).[15]

Significantly, the Court declined to sanction the State's argument that the prosecutor was merely making an invited response to defense counsel's earlier improper remarks. The Court noted that "[c]learly two improper arguments—two apparent wrongs—do not make for a right result," 470 U.S. at 11, 105 S.Ct. at 1044, 84 L.Ed.2d at 9, and then stated:

"Reviewing courts ought not to be put in the position of weighing which of two inappropriate arguments was the lesser. 'Invited responses' can be effectively discouraged by prompt action from the bench in the form of corrective instructions to the jury, and when necessary, an admonition to the errant advocate." 470 U.S. at 13, 105 S.Ct. at 1045, 84 L.Ed.2d at 11.

In this case, the defense attorney had in his closing argument made a statement that could be construed to indicate the jury could acquit the defendant even though

---

13. Rule 52(b), F.R.Cr.P., is the same as our Rule 52(b) of the W.Va.R.Cr.P., and provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

14. The Court, in Note 3 of *Young*, 470 U.S. at 7, 105 S.Ct. at 1042, 84 L.Ed.2d at 7, quoted these relevant provisions:

"'In appearing in his professional capacity before a tribunal, a lawyer shall not:

"'(3) Assert his personal knowledge of the facts in issue, except when testifying as a witness.

"'(4) Assert his personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused; but he may argue, on his analysis of the evidence, for any position or conclusion with respect to matters stated herein.'

"*See also* ABA Model Rules of Professional Conduct, Rule 3.4(e) (1983)."

15. After quoting subsection (b) of the standard in the text, the Court in Note 5 of *Young*, 470 U.S. at 8, 105 S.Ct. at 1043, 84 L.Ed.2d at 8, quoted the remaining portions and relevant commentary. We include Subsection (b) by way of bracket:

"'(a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

"'[(b) It is unprofessional conduct for the prosecutor to express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.]

"'(c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.

"'(d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.

"'(e) It is the responsibility of the court to ensure that final argument to the jury is kept within proper, accepted bounds.'

"The accompanying commentary succinctly explains one of the critical policies underlying these proscriptions:

"'Expressions of personal opinion by the prosecutor are a form of unsworn, unchecked testimony and tend to exploit the influence of the prosecutor's office and undermine the objective detachment that should separate a lawyer from the cause being argued.'" *Id.*, at 3.89.

Much the same obligations are imposed on defense counsel in ABA Standards for Criminal Justice 4–7.8.

they were totally convinced he was guilty.[16] No objection by the prosecution was made to this statement. In the prosecutor's closing argument, he answered the defendant's argument as follows:

"Mr. Casey would stand up here and tell you that, even if you are completely convinced of the Defendant's guilt, under the facts and under the law, turn him loose anyway. Ladies and gentlemen, to do that is a violation of your sworn oath that you took before this Court. It is the same type of violation this man, Michael Wayne Grubbs, committed in Mason County in May of 1982. He lied. By our traditions and our society, he lied. He committed a crime, a vicious crime. Oh, no, he didn't cut anybody. He didn't shoot anybody. There is no blood spilled, but he lied.

"He committed a crime that involves the most heinous sense of moral turpitude. It is completely repugnant, and it smacks at the very essence of our lives and our economic system, the ability to transact a business at your local bank, at your local grocery store, and have faith in that, when you give a check or receive a check, it is a good check, that it is as good as the currency that the United States Government prints. He committed that type of an act, a disgusting, repugnant act for which, based upon the evidence as it has been presented and heard in this Courtroom, there is no alternative other than a verdict of guilty by you if you honor your oaths and do your duty."

He then proceeded to disparage the defendant's two alibi witnesses because of their inability to remember certain facts, and concluded: "Their testimony and the manner in which they testified is not worthy of belief in this Courtroom today." The defense attorney made no objections to these remarks.

Independent of the Code of Professional Responsibility, we have historically recognized that the prosecuting attorney occupies what we term a quasi-judicial role. In *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977), we reviewed a number of our earlier cases and came to this conclusion in Syllabus Point 3:

"The prosecuting attorney occupies a quasi-judicial position in the trial of a criminal case. In keeping with this position, he is required to avoid the role of a partisan, eager to convict, and must deal fairly with the accused as well as the other participants in the trial. It is the prosecutor's duty to set a tone of fairness and impartiality, and while he may and should vigorously pursue the State's case, in so doing he must not abandon the quasi-judicial role with which he is cloaked under the law."

We recognized in part of the single Syllabus of *State v. Moose*, 110 W.Va. 476, 158 S.E. 715 (1931), that "[i]t is a flagrant abuse of [the prosecutor's] position to refer, in his argument to the jury, to material facts outside the record, or not fairly deducible therefrom."

In *State v. Critzer*, 167 W.Va. 655, 280 S.E.2d 288 (1981), we set aside the conviction solely on the basis of improper remarks of the prosecutor in his closing arguments. There the prosecutor expressed his personal opinion as to the defendant's guilt, asserted his belief as to the honesty, sincerity and truthfulness of his witnesses while commenting adversely on the defendant's witnesses' veracity. We utilized the ABA Code in Syllabus Point 3, stating:

"It is improper for a prosecutor in this State to '[a]ssert his personal opinion as to the justness of a cause, as to the credibility of a witness ... or as to the guilt or innocence of the accused....' ABA Code DR7-106(C)(4) in part."

16. This statement was:
"He is entitled to be acquitted if you have a reasonable doubt as to any of the elements, any of the elements of either crime. Even if you are totally convinced he did it, you could still find him not guilty. The Court has told you that. You may find him guilty if you are convinced beyond a reasonable doubt of each and every element. That is permissive, you 'may.' It doesn't say you have to."

The same result occurred in *State v. Kanney*, 169 W.Va. 764, 289 S.E.2d 485 (1982), and there we made this statement, "we would add that when a prosecuting attorney's closing argument clearly goes beyond the bounds of propriety, the trial court has a duty to intervene to limit and to attempt to correct any impropriety in the interest of ensuring that the defendant receives a fair trial." 169 W.Va. at 766, 289 S.E.2d at 487, *quoting State v. Myers*, 159 W.Va. 353, 362, 222 S.E.2d 300, 306 (1976).

In *Critzer*, persistent objections had been made to no avail, while in *Kanney* not all statements made were objected to, but we concluded a sufficient objection was made to preserve the issue. Customarily, we have refused to consider objectionable remarks in a closing argument unless an objection has been made, as illustrated by Syllabus Point 7 of *State v. Cirullo*, 142 W.Va. 56, 93 S.E.2d 526 (1956):

> " 'Failure to make timely and proper objection to remarks of counsel made in the presence of the jury, during the trial of a case, constitutes a waiver of the right to raise the question thereafter either in the trial court or in the appellate court.' Point 6, syllabus, *Yuncke v. Welker*, 128 W.Va. 299 [36 S.E.2d 410] [(1945)]."

*See also State v. Trogdon*, 168 W.Va. 204, 283 S.E.2d 849 (1981).

■ Recently, we spoke to the utilization of the plain error doctrine in *State v. Hatala*, 176 W.Va. 435, 345 S.E.2d 310 (1986), where there had been a failure to object to certain remarks of the prosecutor in his closing arguments. We referred to *United States v. Young, supra,* and concluded in Syllabus Point 2:

> "The plain error doctrine of W.Va. R.Crim.P. 52(b), whereby the court may take notice of plain errors or defects affecting substantial rights although they were not brought to the attention of the court, is to be used sparingly and only in those circumstances in which a miscarriage of justice would otherwise result."

Our use of the phrase "miscarriage of justice" is but a summary of the Supreme Court's elaboration in *Young* which was that the plain error rule could be applied to "those errors that 'seriously affect the fairness, integrity or public reputation of judicial proceedings.' " 470 U.S. at 15, 105 S.Ct. 1047, 84 L.Ed.2d at 12.

The plain error doctrine was applied in *State v. Starr*, 158 W.Va. 905, 216 S.E.2d 242 (1975), to "take cognizance of plain error involving a fundamental right of an accused which is protected by the Constitution." Syllabus Point 4, in part. In *State v. Oxier*, 175 W.Va. 760, 338 S.E.2d 360 (1985), we held the defendant's due process rights had been violated by the prosecutor's closing argument when he commented adversely about the defendant's pretrial silence in violation of Syllabus Point 1 of *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977).[17]

■ Several conclusions emerge from the foregoing discussion. First, we do not countenance the invited response rule. If either the prosecutor or defense counsel believes the other has made improper remarks to the jury, a timely objection should be made coupled with a request to the court to instruct the jury to disregard remarks. A later attempt to retaliate by way of improper argument will not be excused under the invited response rule.

Second, the doctrine of plain error with regard to objectionable closing remarks is sparingly applied. This rule requires counsel to make timely objections so that the matter can be corrected at the trial court level. There is obviously a considerable tactical advantage to be gained if counsel can remain silent and then press the point on appeal through the plain error doctrine.

17. Syllabus Point 1 of *Boyd* states:

"Under the Due Process Clause of the West Virginia Constitution, Article III, Section 10, and the presumption of innocence embodied therein, and Article III, Section 5, relating to the right against self-incrimination, it is reversible error for the prosecutor to cross-examine a defendant in regard to his pre-trial silence or to comment on the same to the jury."

In the present case, we do not condone the remarks of either counsel. We find the prosecutor's comments to be much more egregious in light of his quasi-judicial role. The characterization of the crime of forgery and uttering as "vicious" and "a disgusting and repugnant act" was unwarranted. It was also improper to demand a verdict of guilty.

In spite of these offensive remarks, when the entire record is reviewed, we are unable to conclude that the plain error test has been met. After this initial outburst, the prosecutor did return to a moderate closing argument, reviewing the evidence in an objective fashion, acknowledging the necessity of proving the State's case beyond a reasonable doubt, and referring to the presumption of innocence under the court's instructions.

For the foregoing reasons, we find no reversible error and affirm the judgment.

Affirmed.