# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**FILED**

November 22, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 12-1293** (Berkeley County 11-F-208)

**Thomas A. Grantham Jr.,**
**Defendant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Thomas A. Grantham Jr., by counsel B. Craig Manford, appeals his convictions and sentences for second degree murder, attempted murder, and malicious assault as set forth in the Circuit Court of Berkeley County's sentencing order entered on September 14, 2012. Respondent State of West Virginia, by counsel Christopher C. Quasebarth, responds in support of the convictions and sentences.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

## I.  Facts and Procedural History

The State asserted that on the night of April 22 and into the early morning of April 23, 2011, petitioner and Co-Defendant James Cross were at a bar in Martinsburg. They were seen at the bar by fellow patrons Sharenna Gonzalez, Sheron Yates, and Shameeka Yates, and by bar employee Daniel Derito. Derito also identified petitioner and Cross on video surveillance taken at the bar that night.

Derito testified that after the bar closed, he broke up a verbal dispute between petitioner and Cross and two other males. Gonzalez and Sheron Yates testified that while outside the bar, they witnessed a verbal dispute between Cross and another man, Jacques Taylor. There was testimony that Cross flicked a cigarette into the face of Taylor's friend, Andre Jackson. Gonzalez, who was not drinking that night, testified that she and Cross got into Cross's car where Gonzalez tried to calm Cross down. Gonzalez testified that she got out of the car when petitioner got in.

The State's witnesses testified that petitioner and Cross then left together, with petitioner driving. Taylor and Jackson followed in a car driven by Taylor. Gonzalez and the Yateses

1

followed in a third vehicle that was driven by Gonzalez. There was testimony that petitioner pulled into a gas station, followed by the other vehicles. Angry words were exchanged between the occupants of the petitioner/Cross vehicle and the Taylor/Jackson vehicle. The Taylor/Jackson vehicle pulled out of the gas station followed by the petitioner/Cross vehicle and the Gonzalez/Yates vehicle. The Taylor/Jackson vehicle turned into an apartment complex and headed up a hill toward the back of the complex. The petitioner/Cross vehicle and the Gonzalez/Yates vehicle stopped in a parking area to turn around. The petitioner/Cross vehicle pulled out of the parking area. Gonzalez testified that she tried to follow but her vehicle was almost struck by the Taylor/Jackson vehicle being driven in reverse down the road out of the complex.

The three cars came to a stop. Gonzalez and the Yateses testified that petitioner and Cross exited their vehicle and ran to the Taylor/Jackson vehicle, with petitioner going to the driver's side (Taylor) and Cross going to the passenger's side (Jackson). Taylor testified at trial that he rolled down his window to speak but was immediately stabbed in the neck, chest, arms, and shoulder. At trial, Gonzalez and the Yateses identified petitioner as the perpetrator who stabbed Taylor. Meanwhile, Cross was repeatedly stabbing Jackson. The women exited their vehicle and observed the altercation. The women testified that petitioner and Cross then ran back to their car, with petitioner knocking Shameeka Yates down as he ran past her. They testified that as petitioner was driving away, he attempted to run down Jackson.

The 911 center was called at approximately 3:18 a.m. on April 23. Taylor survived, but Jackson collapsed and died from his injuries.

The next day, April 24, which was Easter Sunday, petitioner called his cousin to explain that he was en route to her home in Cincinnati and needed her address. The cousin testified that she had previously invited petitioner to attend her daughter's birthday party on April 27, but he had not told her he was coming. Petitioner, accompanied by Cross, arrived at the cousin's home and stayed in the bedroom of the cousin's sons. Police later searched this bedroom and found tote bags with four knives and two false identification cards, including a West Virginia identification card that had petitioner's photograph but a false name. Police also searched a home in Martinsburg where petitioner frequently resided, finding two box cutters hidden in a cigar box with petitioner's real identification card, and a butcher knife in a bedroom.

When questioned by police after the crime, Sheron Yates did not refer to petitioner by name but only as the "black male." However, Sheron later identified petitioner in a police photo array. Shameeka Yates was unable to identify petitioner in the photo array, but identified him at trial. Taylor gave conflicting information to police and initially said that he was not sure if his assailant was male or female. At trial, Taylor was unable to identify his assailant other than to say that it was an African-American male whom he had seen at the bar that night. At trial, Gonzalez identified petitioner as an assailant.

Petitioner did not testify at trial but asserted an alibi defense. His lawyer argued that some other man, not petitioner, was in the car with Cross at the time of the physical altercation. The defense presented testimony from petitioner's neighbor William Golden that around 3:00 a.m. on April 23, Golden saw petitioner standing on their street. Golden testified that he heard a car pull

2

up and when he went back outside, petitioner was gone and a Mercedes was leaving. The defense also presented testimony from petitioner's friend Darnell Carey that he saw petitioner get dropped off by a Mercedes at 3:10 a.m. and then get into a black Cadillac.

Petitioner and Cross were jointly indicted and tried. Petitioner was convicted of second degree murder, attempted murder, and malicious assault. He was acquitted of a conspiracy charge. He was sentenced to the statutory terms of incarceration, to run consecutively, for a total of forty-three to fifty-three years in prison.

This is petitioner's direct appeal of his convictions and sentences.

## II. Discussion

### A. Co-Defendant

Petitioner raises two assignments of error pertaining to his joint trial with Co-Defendant Cross: that it was error for the circuit court to deny petitioner's motion to sever their trials, and that it was error to prohibit petitioner's counsel from commenting upon Mr. Cross's silence during closing argument. Because his arguments on these two assignments of error overlap, we will address them together.

Rule 14(b) of the West Virginia Rules of Criminal Procedure provides, "[i]f the joinder of defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the State, the Court may sever the defendants' trials, or provide whatever other relief that justice requires." We have held that a trial court's ruling on a severance motion is considered under an abuse of discretion standard. Syl. Pt. 3, *State v. Hatfield*, 181 W.Va. 106, 380 S.E.2d 670 (1989) (considering a motion for severance of offenses filed under W.Va. R. Crim. P. 14(a)); Syl. Pt. 1, *State v. Rash*, 226 W.Va. 35, 697 S.E.2d 71 (2010) (same). We review a trial court's evidentiary rulings under the same standard. Syl. Pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998) ("A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard.")

Petitioner argues that he was prejudiced by the joint trial. According to petitioner, the State's evidence showed Cross to be the more culpable of the two, including that Cross was involved in the fight at the bar and Cross's victim died. Moreover, Cross's car was present at the scene of the crime, while petitioner was relying upon an alibi defense. Petitioner says that he had a reason to be in Cincinnati the next day, while Cross did not. Furthermore, petitioner complains that he was unable to call Cross to the stand to force Cross, in front of the jury, to invoke his Fifth Amendment right to remain silent. Petitioner argues that his lawyer could have then commented upon Cross's silence during closing argument. Petitioner asserts that this would have been helpful to his case because Cross is the only witness who knows for certain whether petitioner was the co-perpetrator.

Upon a review of the record and the parties' arguments, we find no merit to petitioner's arguments. The evidence against both co-defendants was inextricably intertwined and arose from the same act or transaction, and the co-defendants did not put on conflicting defenses. The desire

3

to draw an inference from the co-defendant's silence was not grounds to defeat this joinder. The Fourth Circuit Court of Appeals held that "[i]t is axiomatic that a defendant's failure to testify cannot be used to draw an inference of guilt. Similarly, a co-defendant's failure to testify cannot be used to draw an inference of innocence on behalf of the complaining defendant. See *United States v. Marquez*, 449 F.2d 89, 93 (2d Cir.1971)." *United States v. Najjar*, 300 F.3d 466, 475 (4th Cir. 2002). Thus, the circuit court did not abuse its discretion in denying the motion to sever or in prohibiting comments upon Cross's silence during closing argument.

## B. In-Court Identifications

Next, petitioner argues that the circuit court should have excluded as unreliable the witnesses' in-court identification of him as a perpetrator. As set forth above, a trial court's evidentiary rulings are reviewed under an abuse of discretion standard. Syl. Pt. 4, *Rodoussakis*, 204 W. Va. at 61, 511 S.E.2d at 472 (1998). Furthermore, when a criminal defendant asserts that an in-court identification was tainted by an out-of-court identification, this Court "must look to the totality of the circumstances and determine whether the identification was reliable[.]" Syl. Pt. 5, in part, *State v. Myers*, 229 W.Va. 238, 728 S.E.2d 122 (2012) (quoting Syl. Pt. 3, in part, *State v. Casdorph*, 159 W.Va. 909, 230 S.E.2d 476 (1976).

Petitioner argues that both Sheron and Shameeka Yates were intoxicated on the night in question, and that Shameeka was unable to identify petitioner in a photo array the next day. He argues that although Sheron identified his photo in the array, she had met him a month earlier and thus already knew what he looked like. Petitioner also suggests that the officer who showed Sheron the array influenced her choice. He argues that Sheron, Shameeka, and Gonzalez were too far away from the altercation to see the perpetrator clearly. He complains that Taylor could not identify his assailant immediately after the crimes, but at trial testified that his assailant was an African-American male whom Taylor had seen at the bar that night.

Upon a careful consideration of petitioner's and the State's arguments, we find no abuse of discretion in the circuit court's admission of the in-court identification testimony. All three women saw petitioner at the bar, followed behind the other cars, and testified to seeing the attack. They were able to observe petitioner and Cross over an extended period of time. Gonzalez had not been drinking that night and was close to petitioner when petitioner got into Cross's car at the bar. Petitioner knocked one of the women down as he ran back to Cross's car, thus they were certainly close enough to identify him. Moreover, the reliability of the identification testimony is supported by the testimony of bar employee Derito, who knew both petitioner and Cross; broke up a verbal altercation between them and two other males after the bar closed that night; and observed petitioner and Cross leaving in a car, with petitioner driving. The witnesses were subject to cross-examination and any weaknesses or conflict in their testimony goes to the weight of the evidence, not to its admissibility.

## C. Admission of Other Evidence

In three assignments of error that he argues together, petitioner asserts that the circuit court admitted evidence in violation of Rules 401 and 403 of the West Virginia Rules of Evidence. Rule 401 provides that "'[r]elevant evidence' means evidence having any tendency to

4

make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." We review a trial court's evidentiary rulings and application of the Rules of Evidence under an abuse of discretion standard. Syl. Pt. 4, *Rodoussakis*, 204 W. Va. at 61, 511 S.E.2d at 472 (1998).

*Flight evidence:* Petitioner argues that it was error for the court to admit evidence of his Cincinnati trip as flight evidence and evidence of guilt. He asserts that he had a reasonable explanation for his visit—a family birthday party—and while in Cincinnati he did not act as if he were in hiding. He argues that although he had a fake identification card with him, the card was two years old and thus was not obtained to assist in this alleged flight.

This Court has previously written on the admissibility of flight evidence:

> "'In certain circumstances evidence of the flight of the defendant will be admissible in a criminal trial as evidence of the defendant's guilty conscience or knowledge. Prior to admitting such evidence, however, the trial judge, upon request by either the State or the defendant, should hold an in camera hearing to determine whether the probative value of such evidence outweighs its possible prejudicial effect.' Syl. Pt. 6, *State v. Payne*, 167 W.Va. 252, 280 S.E.2d 72 (1981)." Syl. Pt. 7, *Acord v. Hedrick*, 176 W.Va. 154, 342 S.E.2d 120 (1986).

Syl. Pt. 14, *State v. Jessie*, 225 W.Va. 21, 689 S.E.2d 21 (2009).

We find no merit to petitioner's arguments. His trip out-of-state was in close proximity to the crimes, petitioner's cousin did not know he was coming, he was three days early for the birthday party, and his explanation does not explain why Cross went along with him. The circuit court held an *in camera* hearing and properly ruled that the relevance of the evidence was not substantially outweighed by any unfair prejudicial effect. It was for the jury to weigh the evidence and petitioner's explanation.

*Autopsy photos:* Next, petitioner argues that it was error to admit gruesome autopsy photos depicting victim Jackson, particularly a photo showing bowels protruding from Jackson's body. Petitioner argues that the medical examiner's testimony rendered the photos unnecessary. The State responds that the photos were printed in black and white so as to minimize their graphic effect, and that the photos were relevant to prove malice.

Rules 401 and 403 apply to the admissibility of photographs. "As to the balancing under Rule 403, the trial court enjoys broad discretion. The Rule 403 balancing test is essentially a matter of trial conduct, and the trial court's discretion will not be overturned absent a showing of clear abuse." Syl. Pt. 10, in part, *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994); Syl. Pt. 6, in part, *State v. Mongold*, 220 W.Va. 259, 647 S.E.2d 539 (2007). We find no clear abuse of discretion in the admission of these photographs. The severity of the victim's abdominal injury showed that the stabbing was intentional and inflicted with malice.

***Knives/Box Cutters:*** Next, petitioner asserts that it was unfairly prejudicial to allow the State to offer testimony about knives found in the bedroom where he stayed in his cousin's Cincinnati home, and about box cutters and a butcher knife found in the Martinsburg home where he frequently stayed. He argues that the State failed to prove a nexus between any of these items and the crimes; that the sheer number of knives found, without more, inflamed the jury; and this evidence was offered to improperly bridge a gap in the State's evidence because the murder weapon was never found. The State responds that this case concerned stabbings, thus the possession and use of knives by the co-defendants was a material fact in the case.

Upon a careful consideration of the record and the parties' arguments, we cannot conclude that the circuit court abused its discretion in admitting testimony about the knives and box cutters. However, even if the admission of this testimony was error, it was harmless beyond a reasonable doubt. The test for harmless error is as follows:

> Where improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury.

Syl. Pt. 2, *State v. Atkins*, 163 W.Va. 502, 261 S.E.2d 55 (1979). In petitioner's case, removal of the evidence about the knives and box cutters would still leave a plethora of evidence sufficient to convict petitioner beyond a reasonable doubt. In light of the other, extensive evidence, we cannot conclude that this evidence had a prejudicial effect.

### D. Sufficiency of the Evidence

Petitioner argues that the evidence at trial was insufficient to prove beyond a reasonable doubt that he committed these crimes. In addition to his alibi evidence, petitioner asserts that Mr. Taylor was shown to be the true aggressor. He also argues that the eyewitnesses were impeached or were unreliable.

We review a sufficiency of the evidence argument under the following framework:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). Viewing the evidence in this

case in the light most favorable to the prosecution, we easily conclude that a rational trier of fact could have found the essential elements of second degree murder, attempted murder, and malicious wounding were proven beyond a reasonable doubt. There were multiple eyewitnesses at trial who saw petitioner at the bar, saw petitioner in the car with Cross, and who saw petitioner and Cross commit the crimes. There was no dispute that Taylor and Jackson were stabbed multiple times and that Jackson died from his wounds. There was also flight evidence, which, as discussed above, is admissible to show guilt. Petitioner's alibi defense and any inconsistencies in the testimony were presented to the jury, and we have no grounds to second-guess the jury's decision.

### E. Concerted Action Instruction

Petitioner argues that it was error for the circuit court to give the following concerted action instruction to the jury:

> A person who is the absolute perpetrator of a crime is a principal in the first degree. A person who is actually or constructively present at the scene of a crime at the same time as the criminal act of the absolute perpetrator, who acts with shared criminal intent, contributing to the criminal act of the absolute perpetrator, is an aider and abettor, and a principal in the second degree, and as such may be criminally liable for the criminal act as if he were the absolute perpetrator of the crime. Actual physical presence at the scene of the criminal act is not necessary where the aider and abettor was constructively present at a convenient distance at the time and place of the criminal act, acting in concert with the absolute perpetrator. However, you are cautioned that merely witnessing a crime without intervention therein does not make a person a party to its commission unless his interference was a duty, and his non-interference was designed by him and operated as an encouragement to or for protection of the absolute perpetrator of the criminal act.

Petitioner acknowledges that this instruction is consistent with Syllabus Point 11 of *State v. Fortner*, 182 W.Va. 345, 387 S.E.2d 812 (1989): "[u]nder the concerted action principle, a defendant who is present at the scene of a crime and, by acting with another, contributes to the criminal act, is criminally liable for such offense as if he were the sole perpetrator."

However, petitioner argues that the instruction should have included more language from our discussion in the *Fortner* opinion. He asserts that the instruction should have required the State to prove that he "knowingly intended to assist, encourage, or facilitate the design of the criminal actor." *Id.,* 182 W.Va. at 356, 387 S.E.2d at 823. We disagree. The language which petitioner cites from the discussion in *Fortner* was used to help explain the intent requirement for an aider and abettor. We conclude that the circuit court sufficiently addressed the intent requirement in its instruction. The circuit court covered this issue by instructing that there must be more than mere presence; an aider and abettor must "act[] with shared criminal intent, contributing to the criminal act of the absolute perpetrator[.]" The circuit court's instruction was a correct statement of the law.

7

Petitioner also suggests that there was no showing of any shared intent between himself and Mr. Cross, therefore a concerted action instruction should not have been given. We easily reject this argument. The State asserted, and based upon their verdict, the jury found, that petitioner and Cross ran toward a vehicle together, attacking and severely stabbing their victims. The only difference is that petitioner's victim survived his severe stabbing wounds, while Cross's victim died. Under the facts of this case, there was sufficient evidence for the court to instruct the jury on a concerted action theory.

### F. Consecutive Sentences

Finally, petitioner contends that the circuit court abused its discretion when imposing his sentences. The circuit court ordered petitioner to be incarcerated in prison for the statutory terms for each of his crimes: a determinate term of forty years for second degree murder pursuant to West Virginia Code § 61-2-3; an indeterminate term of one to three years for attempted murder pursuant to West Virginia Code § 61-11-8(2); and an indeterminate term of two to ten years for malicious assault pursuant to West Virginia Code § 61-2-9(a). The circuit court ordered the sentences to be run consecutively. Pursuant to West Virginia Code § 61-11-21, sentences for two or more convictions shall be consecutive unless the sentencing court orders them to run concurrently.

"The Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syl. Pt. 1, in part, *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997). Moreover, "[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." Syl. Pt. 4, *State v. Goodnight*, 169 W. Va. 366, 287 S.E.2d 504 (1982). Petitioner does not assert that any impermissible factor was considered when imposing sentence. Indeed, although he assigns error regarding his sentences, he fails to include any argument in support thereof in his brief. Given the severity of the crimes, and the lack of any indication that the circuit court relied upon an impermissible factor, we find no abuse of discretion in petitioner's sentences.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 22, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II