354 S.E.2d 610

**STATE of West Virginia**

v.

**Jerry Elbert COLLINS.**

**No. 16569.**

Supreme Court of Appeals of West Virginia.

Feb. 27, 1987.

---

Richard H. Lorensen, Lewisburg, for appellant.

Gayle Fidler, Asst. Atty. Gen., Charleston, for appellee.

BROTHERTON, Justice:

This is an appeal by Jerry Elbert Collins from a jury verdict finding him guilty of first degree murder with no recommendation of mercy. Mr. Collins was tried in the Circuit Court of Monroe County, before the Honorable Charles M. Lobban on April 7, 8, 9, and 10, 1980. He comes to this Court with two assignments of error, prosecutorial overmatch and prosecutorial misconduct.

On November 10, 1978, Wesley Frame, a conservation officer with the Department of Natural Resources, went to the Collins house to bring him before a Monroe County magistrate concerning some trash which had been dumped in a stream. Mr. Collins was taken by Mr. Frame to the magistrate's office in Union, West Virginia, where the magistrate fined Collins $25.00 and told him that he would have to remove the trash from the stream. As Collins was leaving, a deputy sheriff from the Monroe County Sheriff's Office arrived holding an arrest warrant for an outstanding bad check charge against Mr. Collins in neighboring Giles County, Virginia.

After a short meeting, it was decided that Officer Frame would accompany Collins while he removed the trash from the stream, and would return him to the sheriff. The pair first went to Collins' house so Collins could change clothes. Upon arriving at the house, Collins first obtained a new shirt and then began looking for the keys to his truck. Apparently still looking for the keys, he went into the bedroom, but returned armed with a 30–30 deer rifle. He pointed the gun at Officer Frame and told him to leave. Officer Frame backed up against the door and partially raised his hands in the air and said: "Now, Jerry, put the gun down." Collins then shot Officer Frame in the head, killing him instantly.

Mr. Collins then loaded his family into a pickup truck and fled to his wife's friend's house in Akron, Ohio. When police found him there, he shoved out his arms and said: "I'm the one you want."

At trial, Mr. Collins' defense was that he suffered from brief psychotic episodes, during which times he was not responsible for his acts, and that the shooting of Officer Frame was during one of these episodes. Relatives and friends testified that he had spells of insanity. Dr. David Wayne, a psychiatrist, testified that at the time of the shooting Collins was suffering from a brief psychotic episode in which he lost contact with reality and was not able to control his impulses.

The State rebutted this defense with four doctors who testified that Mr. Collins was not legally insane at the time of the shooting.

The jury found Mr. Collins guilty of first degree murder without a recommendation of mercy.

I.

■ Mr. Collins claims that his case was an example of prosecutorial overmatch. It was not. In *Acord v. Hedrick*, 176 W.Va. 154, 342 S.E.2d 120 (1986), we held that to prove prosecutorial overmatch, the defense must show that the overmatch was such that it rendered defense counsel ineffective. Syllabus point 1 of that case noted: "The gravamen of any 'prosecutorial overmatch' claim is proof of ineffectiveness of counsel as determined by reference to the trial record." A review of the record showed that Mr. Collins was ably represented by his trial counsel. Objections were made at the proper time, evidence was skillfully introduced, and the case was well argued to the jury. The defense was in no way intimidated or overmatched by the prosecution. We, therefore, hold that there was no prosecutorial overmatch in this case.

II.

■ The defense moved for mistrial after the close of all the evidence and the

court had gone through the instructions. (R. 818). The gist of the motion was that a day or so before, during the trial, one of the prosecuting attorneys made a statement in the witness room to a group of Ohio policemen, who were witnesses in the trial, concerning Nannie Collins, Jerry Collins' wife. The statement, which was overheard by Mrs. Collins, was: "We will see you all in June when we nail Nannie's hide to the wall." The statement was in reference to the fact that both Mr. and Mrs. Collins had been indicted for the murder, and Mrs. Collins' trial was to be in June. Mrs. Collins was a potential defense witness, and her husband now asserts that the prosecutor's statement undermined the usefulness of her testimony.

The statement was of a vindictive nature, and a prosecutor's intimidation of defense witnesses has in many cases been held to be a violation of the defendant's due process rights.[1] Nevertheless, several factors influence us to hold that any effect of the statement was harmless.

The statement was not made with the intention to intimidate Nannie Collins. It was not directed toward her, and she was not meant to hear it. Therefore, it cannot be said that the statement was made in bad faith. Courts view an honest mistake by the prosecution more leniently than a bad faith attempt to improperly influence the trial. See, e.g., State v. McDowell, 391 N.W.2d 661, 666 (S.D.1986).

Also, in light of the facts of this situation, the statement does not appear to be greatly intimidating. Mrs. Collins was already under indictment. She was well aware that the prosecution intended to try her in June, and hoped to convict her. The statement was not so much a threat, but a pungent statement that she would be tried in June, a fact she already knew. The statement, if anything, would seem to have encouraged her to testify. Mrs. Collins' testimony on the stand was to have been that her husband, in an uncontrolled fit of insanity, suddenly and inexplicably shot and killed Officer Frame. The story, if believed, would have tended to exculpate her from any wrongdoing. Knowing that the prosecution intended to try her on the same charge, it would seem that hearing the statement would have given Mrs. Collins an even greater desire to pin the responsibility for Officer Frame's death on an unpredictable fit of insanity by her husband.[2]

Further, Mrs. Collins remained willing to testify to the spells of insanity after the statement. The decision was made by the trial counsel not to call her as a witness because of his belief that she would no longer be as useful a witness due to the statement by one of the prosecutors. Therefore, there is no certainty that any harm actually occurred. In considering whether an error in the trial requires reversal, we consider whether there is a strong probability of actual harm or whether any harm was merely theoretical or speculative. See syl. pt. 2, Cannellas v. McKenzie, 160 W.Va. 431, 236 S.E.2d 327 (1977). In this case, any injury to the defendant's case was quite speculative.

Finally, the defense counsel knew of this situation prior to the close of evidence phase of the case and could have brought the matter up at that time, giving the court an opportunity to acquaint the witness with her right to testify and her right to utilize the Fifth Amendment. His failure to do so is a waiver of this point.

Taken together, we find that these factors wash away any taint that the inopportune statement may have placed on the trial.

Because we find no error by the trial court, the conviction of Jerry Elbert Collins is affirmed.

Affirmed.

---

1. See United States v. Hammond, 598 F.2d 1008, modified on reh'g, 605 F.2d 862 (5th Cir.1979); United States v. Morrison, 535 F.2d 223 (3rd Cir.1976); United States v. Thomas, 488 F.2d 334 (6th Cir.1973).

2. The charges against Mrs. Collins were dropped after her husband's conviction.