# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Ray Rash,**
**Petitioner Below, Petitioner**

**FILED**

May 24, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

vs) **No. 12-0564** (Mercer County 11-C-22)

**Marvin Plumley, Warden, Huttonsville Correctional Center,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Ray Rash's appeal, filed by counsel Phillip Scantlebury, arises from the Circuit Court of Mercer County, wherein petitioner's petition for writ of habeas corpus was denied by order entered on March 30, 2012. Respondent Marvin Plumley, Warden, by counsel Laura Young, filed a response in support of the circuit court's decision.[1]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Following a jury trial in May of 2007, petitioner was convicted of three counts of various sexual abuse charges and sentenced to ten to twenty years in prison. On appeal, we upheld petitioner's convictions. Petitioner subsequently petitioned for writ of habeas corpus in circuit court. Following two omnibus evidentiary hearings on his initial petition and his amended petition, the circuit court entered its twenty-two-page order denying petitioner habeas corpus relief. In the petition below, petitioner raised several different arguments, including ones he raises on appeal.

Petitioner Rash asserts in his petition for appeal that, in addition to the assignments of error specified in his brief, he incorporates by reference his original petition and amended petition for habeas corpus relief filed in circuit court. Respondent Warden precedes his response to petitioner's arguments on appeal by challenging petitioner's desire to incorporate his circuit court petitions. Respondent reiterates our prior sentiment that, "[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim . . . Judges are not like pigs, hunting for truffles buried in briefs." *State Dept. of Health v. Robert Morris N.*, 195 W.Va. 759, 765, 466 S.E.2d 827, 833 (1995). In light of petitioner's skeletal argument to incorporate any arguments formulated below, we proceed by only reviewing the developed arguments contained in petitioner's petition on appeal.

---

[1] Pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure, we have replaced the original respondent's name, Adrian Hoke, with Marvin Plumley, who is the present warden of Huttonsville Correctional Center.

First, Petitioner Rash argues that he was prejudiced by a seventeen-year delay before he was indicted on the sexual abuse charges for which he was later convicted. He argues that his trial counsel was ineffective in failing to move to dismiss his case based on this issue and that the trial court committed plain error by failing to conduct a hearing, sua sponte, on this issue. In response, Respondent Warden contends that petitioner has failed to prove any error by the circuit court in its determinations of this issue or show that he was prejudiced from any delay in this case. Second, petitioner argues that he was provided ineffective assistance of counsel because there was a "prosecutorial overmatch," asserting that the prosecuting attorney at trial had experience with numerous sexual abuse cases, whereas his trial counsel had no experience in this area prior to petitioner's case. In response, Respondent Warden offers our prior holding on this issue: "'The gravamen of any 'prosecutorial overmatch' claim is proof of ineffectiveness of counsel as determined by reference to the trial record.' Syl. pt. 1, *Acord v. Hedrick*, [176] W.Va. [154], 342 S.E.2d 120 (1986)." Syl. Pt. 1, *State v. Collins*, 177 W.Va. 514, 354 S.E.2d 610 (1987). Respondent argues that petitioner has failed to prove any prosecutorial overmatch outside of his argument that his trial counsel failed to file a motion to dismiss the indictment due to the delay. Respondent further highlights that petitioner's trial counsel secured a hung jury before the case was tried the second and final time in May of 2007.

This Court reviews appeals of circuit court orders denying habeas corpus relief under the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W.Va. 375, 701 S.E.2d 97 (2009).

With regard to arguments concerning pre-indictment delay, we have held as follows: "To maintain a claim that preindictment delay violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution and Article III, Section 10 of the West Virginia Constitution, the defendant must show actual prejudice." Syl. Pt. 2, *State ex rel. Knotts v. Facemire*, 223 W.Va. 594, 678 S.E.2d 847 (2009).

The following standard is applied to claims concerning ineffective assistance of counsel:

> In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

2

Syl. Pt. 5, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

Our review of the record uncovers no error by the circuit court in denying habeas corpus relief to petitioner based on his arguments on appeal. The circuit court's order reflects its thorough analysis concerning petitioner's argument with regard to pre-indictment delay and concerning petitioner's argument with regard to his trial counsel's performance. Having reviewed the circuit court's "Order Denying Petitioner's Petition for Writ of Habeas Corpus" entered on March 30, 2012, we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions as to the assignments of error raised in this appeal. The Clerk is directed to attach a copy of the circuit court's order to this memorandum decision.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** May 24, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

3

NOTED CIVIL DOCKET

MAR 30 2012

JULIE BALL
CLERK CIRCUIT COURT
MERCER COUNTY

*12-0564*

**IN THE CIRCUIT COURT OF MERCER COUNTY, WEST VIRGINIA**

STATE OF WEST VIRGINIA, EX REL,
RAY RASH,

      **Petitioner,**

v.
                                    **Civil Action No. 11-C-22-DS**
                                    **Judge David W. Knight**

ADRIAN HOKE,
HUTTONSVILLE CORRECTIONAL CENTER,

      **Respondent.**

## ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS

On January 13, 2011, Petitioner Ray Rash filed a pro se Petition for Writ of Habeas Corpus pursuant to West Virginia Code § 53-4A-1. Following appointment of Philip A. Scantlebury as Petitioner's counsel, an Amended Petition was filed on May 23, 2011. Respondent, by Kelli L. Harshbarger, filed a Response to Amended Petition, and an omnibus hearing was held on September 9, 2011. Testimony adduced during the omnibus hearing revealed that Petitioner's trial counsel had spoken with the previously-presiding Judge Omar Aboulhosn's law partners during the time that trial counsel represented Petitioner in the underlying criminal action. Accordingly, Judge Aboulhosn recused himself, and Judge David W. Knight was appointed as special judge. Thereafter, the parties reappeared for an omnibus hearing on March 12, 2012. This Court has fully considered the parties' filings, testimony provided in both omnibus hearings, and relevant case and statutory law. Accordingly, it makes the following findings of facts and conclusions of law.

### FINDINGS OF FACT

1.      On October 13, 2005, Petitioner was indicted on six counts of sexual abuse of two minor children under the age of eleven. The first four counts related to alleged sexual abuse of



1

E.C.H. occurring between November 1989 and December 1989. The remaining two counts related to the alleged sexual abuse of A.L., which between during November 2001 and February 2002.

2. Petitioner was first tried in April of 2007; however, the jury was deadlocked, and a mistrial was declared.

3. At the conclusion of the second trial, on May 30, 2007, Petitioner was found guilty of count one - sexual abuse in the first degree; count three - sexual assault in the first degree; and count four - sexual abuse by a custodian. Petitioner was acquitted of counts five and six, and the State had dismissed count two during the trial.

4. Petitioner appealed his conviction to the Supreme Court of Appeals of West Virginia, and the court upheld his conviction by decision dated June 7, 2010.

5. On January 13, 2011, Petitioner filed the instant Petition for Writ of Habeas Corpus. Petitioner alleges misjoinder of offenses, prejudicial pre-indictment delay, improper admission of West Virginia Rule of Evidence 404(b) evidence and hearsay, violation of the Due Process and Confrontation Clauses, and ineffective assistance of trial counsel.

6. Petitioner's Amended Petition, filed May 23, 2011, sets forth additional grounds and expands upon the grounds set forth above. The Amended Petition asserts ineffective assistance of counsel, plain error by the court, prejudicial pre-indictment delay, lack of jurisdiction, denial of a speedy trial, and denial of a preliminary hearing.

7. Respondent fully responded to all issues, the parties presented evidence at omnibus hearings, and the matter is now ripe for disposition.

# CONCLUSIONS OF LAW

8.

Any person convicted of a crime and incarcerated under sentence of imprisonment therefor who contends that there was such a denial or infringement of his rights as to render the conviction or sentence void under the Constitution of the United States or the Constitution of this State, or both, or that the court was without jurisdiction to impose the sentence, or that the sentence exceeds the maximum authorized by law, or that the conviction or sentence is otherwise subject to collateral attack upon any ground of alleged error heretofore available under the common law or any statutory provision of this State, may . . . file a petition for a writ of habeas corpus ad subjiciendum, and prosecute the same, seeking release from such illegal imprisonment, correction of the sentence, the setting aside of the plea, conviction or sentence, or other relief, if and only if such contention or contentions and the grounds in fact or law relied upon in support thereof have not been previously and finally adjudicated or waived in the proceedings which resulted in the conviction and sentence, or in a proceeding or proceedings on a prior petition or petitions filed under the provisions of this article, or in any other proceeding or proceedings which the petitioner has instituted to secure relief from such conviction or sentence.

W. Va. Code § 53-4A-1(a).

## I. Misjoinder of Offenses

9. Petitioner's first alleged error is the misjoinder of offenses. Specifically, Petitioner claims that the misjoinder occurred following a "[h]ighly prejudicial delay of an offense properly investigated in 1989[.]" Petitioner further claims that the offense was "properly investigated in 1989 [and] determined . . . to be a product of imagination without substantial evidence to prosecute at that time."

10. Also, "[t]he delay was highly prejudicial with the loss of exculpatory evidence." Petitioner claims that this "exculpatory evidence" includes the "original audio / video recording

Page 3
3

of the first interview of E.C.H. and her sisters on the unrelated charges[1]" and "reports from that investigating official." Petitioner states that this loss of evidence denied him the "ability to defend himself fairly." Although this ground sounds more in prejudicial pre-indictment delay, because "misjoinder of offenses" was specifically alleged, it too will be considered.

11.

> Even where joinder or consolidation of offenses is proper under the West Virginia Rules of Criminal Procedure, the trial court may order separate trials pursuant to Rule 14(a) on the ground that such joinder or consolidation is prejudicial. The decision to grant a motion for severance pursuant to W. Va. Crim. P. 14(a) is a matter within the sound discretion of the trial court.

*State v. Rash*, 226 W. Va. 35, 40, 697 S.E.2d 71, 76 (2010) (citation omitted).

12. More germane to the issue, however, is the fact that a petitioner may "file a petition for a writ of habeas corpus ad subjiciendum . . . if and only if such contention or contentions and the grounds in fact or law relied upon in support thereof have not been previously and finally adjudicated[.]" W. Va. Code § 53-4A-1(a).

13. Petitioner moved the trial court to reconsider his sentence, and his motion was denied. Petitioner subsequently appealed this denial to this state's supreme court. Petitioner alleged that the trial court erred in failing to sever the charges.

14. The Supreme Court of Appeals of West Virginia held that "the offenses charged against the Appellant were properly joined because there [sic] were 'of the same or similar character.'" *Rash*, 226 W. Va. at 43, 697 S.E.2d at 79. Although the court noted that the charged offenses were separated by eleven years, "when we assess the circumstances of the

---

[1] E.C.H.'s sisters were the victims of sexual abuse by another individual in an unrelated case. During an interview of E.C.H. to determine whether she had been sexually abused by this other individual, she disclosed sexual abuse by Petitioner.

Page 38

4

instant case and balance all of the relevant factors, we believe that the similarities outweigh the temporal remoteness of the offenses." *Id.*

15. Because this issue was previously and finally adjudicated, it cannot be reconsidered now. Relief upon this ground is denied.

## II. Prejudicial Pre-Indictment Delay

16. Petitioner claims that the pre-indictment delay prejudiced him as it resulted in the loss of "exculpatory evidence," including treatment notes and a "forensic interview of the alleged victim" taken in or around 1990. He claims that the loss of these records denied him the "ability to defend himself fairly."

17.

> In an effort to clarify the precise triggering event critical to an analysis of Fifth and Sixth Amendment rights of an accused with regard to allegedly prejudicial delays in prosecution, the events occurring within the defendant's chronology should be characterized as pre-accusatory or post-accusatory. Pre-accusatory delays, encompassing the time period before the moment of accusation whether by arrest or indictment, are evaluated under the Due Process provision of the Fifth Amendment. Post-accusatory delays, encompassing the time period after the moment of accusation whether by arrest or indictment, are evaluated under the speedy trial provision of the Sixth Amendment.

Syl. pt. 8, *State v. Jessie*, 225 W. Va. 21, 689 S.E.2d 21 (2009).

18. "To maintain a claim that preindictment delay violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution and Article III, Section 10 of the West Virginia Constitution, the defendant must show actual prejudice." *Id.* at syl. pt. 9.

> To demonstrate that preindictment delay violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution and Article III, Section 10 of the West Virginia Constitution, a defendant must introduce substantial evidence of actual prejudice which proves he was meaningfully impaired in his ability to defend against the state's charges to such an extent that the disposition of the criminal proceeding was or will be likely affected.

 Page 39

*Id.* at syl. pt. 11.

19.     The Supreme Court of Appeals of West Virginia, in considering its holdings in prior pre-indictment delay cases, noted the "Fourth Circuit's recognition that '[t]he Due Process Clause has never been interpreted so as to impose a presumption of prejudice in the event of a lengthy preindictment delay . . . .'" *State ex rel. Knotts v. Facemire*, 223 W. Va. 594, 600, 678 S.E.2d 847, 853 (2009) (citing *Jones v. Angelone*, 94 F.3d 900, 906 (4th Cir. 1996)). The *Facemire* Court also highlighted the "preference for resolving issues of delay by relying upon statutes of limitations . . . : 'The law has provided other mechanisms to guard against *possible as distinguished from actual* prejudice resulting from the passage of time between crime and arrest or charge.'" *Id.* (citing *Jones*, 94 F.3d at 906).

20.     Petitioner's burden in establishing actual prejudice

> is a heavy burden because it requires not only that a defendant show actual prejudice, as opposed to mere speculative prejudice, . . . but also that he show that any actual prejudice was *substantial* – that he was meaningfully impaired in his ability to defend against the state's charges to such an extent that the disposition of the criminal proceeding was likely affected.

*Id.* at 603, 678 S.E.2d at 856. "Dimming memories and the passage of time alone are insufficient to establish the level of prejudice necessary to show the denial of due process." *Id.* The *Facemire* Court also cited approvingly *U.S. v. Beszborn*, 21 F.3d 62, 67 (5th Cir. 1994), which stated that "[v]ague assertions of lost witnesses, faded memories, or misplaced documents are insufficient to establish a due process violation from pre-indictment delay." *Id.*

21.     Petitioner's assertions are insufficient to meet the above-quoted standard. To begin, Petitioner only conclusorily states that "exculpatory evidence" has been lost as a result of the pre-indictment delay. He points to the "original audio / video recording of the first interview



page 40

6

of EH and her sisters on the unrelated charges," and "[r]eports from that investigating official," but he does not say what exculpatory evidence these records purportedly contain. Petitioner asserts only that the loss of these records denies him the "ability to defend himself fairly." Petitioner does not explain how the passage of time and possible lost evidence affected the disposition of the criminal proceeding.

22. Simply, Petitioner has not alleged any prejudice aside from "vague assertions of . . . misplaced documents," which is insufficient to establish a due process violation. This is particularly true in light of the fact that testimony was offered from E.C.H. and A.L., E.C.H.'s mother and psychologist, A.L.'s psychologist, and others regarding Petitioner's actions toward E.C.H. and A.L. and their resultant mental health issues. These individuals were subject to cross-examination, and the jury was able to judge each witness's credibility. Petitioner makes no effort to explain how the delay or purported loss of documents call into question any of the evidence presented to the jury.

23. Moreover, even if Petitioner's allegations met the substantial prejudice standard enunciated above, relief may be obtained only if the "government's decision to prosecute after substantial delay violates fundamental notions of justice or the community's sense of fair play." Syl. pt. 3, *Facemire.*

24. The State's reasons for failing to prosecute the initial allegations of sexual abuse against E.C.H. included the lack of physical evidence and the likelihood that a jury could believe that the child misinterpreted the touching. But, once additional victims came forward, and through the admission of West Virginia Rule of Evidence 404(b) evidence it could be discerned that the touching was not accidental and that Petitioner had a lustful disposition toward children, the State believed it had sufficient evidence to support an indictment and conviction.

25. As a result, this Court finds that Petitioner has failed to assert any actual prejudice as a result of the pre-indictment delay; however, even if any alleged prejudice could be deemed actual or substantial, the State's decision to prosecute after the delay does not violate fair notions of justice or the community's sense of fair play. Accordingly, Petitioner is not entitled to relief under this ground.

26. Additionally, Petitioner's claim that the pre-indictment delay stripped this Court of jurisdiction similarly fails as this Court previously determined that Petitioner suffered no actual prejudice as a result of the delay, and even if he had, the State's decision to prosecute following the delay does not violate fair notions of justice or the community's sense of fair play.

III. **Admission of 404(b) Evidence (Also Classified by Petitioner as Hearsay)**

27. During Petitioner's trial, E.L., A.L.'s sister, offered testimony regarding several instances of touching that did not amount to sexual abuse, but that was offered under West Virginia Rule of Evidence 404(b) to show "the absence of mistake or inadvertence, . . . lustful disposition for children, common mode, plan, scheme, or design." *Rash*, 226 W. Va. at 47, 697 S.E.2d at 83. Petitioner challenges the admission of this evidence.

28. Petitioner also claims that "uncorroborated testimony was given above objection without supporting documentation to verify the testimony given that EH had been treated at Southern Highland."

29. As with Petitioner's misjoinder of offenses ground, the admission of E.L.'s 404(b) / "hearsay" evidence by the trial court has been previously and finally adjudicated.

30. The *Rash* Court held that "it was appropriate to admit E.L.'s testimony as 404(b) evidence." *Id.* Furthermore, the court found that "testimony from [E.C.H.] regarding the treatment she received from Southern Highlands was admissible despite the fact that treatment

notes were not submitted. . . . The circuit court properly found that this was an issue of credibility, not admissibility." *Id.* at 49, 697 S.E.2d at 85. Further, "[t]here was nothing preventing [E.C.H.] from providing a direct account of the effect that the sexual abuse had on her mentally. Thus, we cannot state that the circuit court abused its discretion in allowing the admission of such testimony." *Id.*

31. Accordingly, because this ground was previously and finally adjudicated, it was not properly raised in Petitioner's instant Petition. Relief upon this ground is denied.

## IV. Confrontation Clause Violation

32. Petitioner contends that the denial of his "access to reports / records / videos / audios of the initial interview" amount to Due Process (*see infra* Part VI.a.) and Confrontation Clause violations. He also asserts that he was accused of an act that was investigated in 1989 and determined to be baseless. "Those determinations and individuals conducting the interviews were to be questioned and were not through ineffective assistance of counsel." To the extent this assertion also incorporates an "ineffective assistance of counsel" argument, it will be analyzed as such below. (*See infra* Part V.a.)

33.

> Pursuant to *Crawford v. Washington* . . . the Confrontation Clause contained within the Sixth Amendment to the *United States Constitution* and Section 14 of Article III of the *West Virginia Constitution* bars the admission of a testimonial statement by a witness who does not appear at trial, unless the witness is unavailable to testify and the accused had a prior opportunity to cross-examine the witness.

Syl. pt. 6, *State v. Mechling*, 219 W. Va. 366, 633 S.E.2d 311 (2006).

34. Despite raising this ground, Petitioner fails to identify any extrajudicial testimony that was admitted in violation of his right to confront witnesses. A review of the trial transcript

by this Court likewise fails to reveal any extrajudicial testimony, and Petitioner is not entitled to relief as no Confrontation Clause violation occurred.

## V. Ineffective Assistance of Counsel

35. Claims of ineffective assistance of counsel are

> governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Syl. pt. 3, *State ex rel. Watson v. Hill*, 200 W. Va. 201, 488 S.E.2d 476 (1997).

36.

> [W]e should always presume strongly that counsel's performance was reasonable and adequate. A defendant seeking to rebut this strong presumption of effectiveness bears a difficult burden because constitutionally acceptable performance is not defined narrowly and encompasses a 'wide range.' The test of effectiveness has little or nothing to do with what the *best* lawyers would have done. Nor is the test even what most good lawyers would have done. We only ask whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at the time, in fact, worked adequately.

*State v. Frye*, 221 W. Va. 154, 158, 650 S.E.2d 574, 578 (2006) (citation omitted). Each of Petitioner's ineffective assistance claims will be addressed in turn.

    a. **Failure to "release a copy of the record / transcripts he has after having been asked" / Failure to "answer questions regarding the initial interviews and why that person was not called to testify" / Failure to "obtain exculpatory evidence and make proper objections when asked to inquire about those first interviews since conviction"**

37. Petitioner first claims that his trial counsel's failure to "release a copy of the record / transcripts he has after having been asked" amounts to ineffective assistance of counsel.

pog 44

10

38. This alleged error is easily disposed of by reference to the second prong of the *Strickland* test. Simply put, Petitioner cannot show that the underlying proceedings would have been different assuming his allegations are true and that he has not been provided copies of the records and transcripts in this matter. Accordingly, this assertion fails, and Petitioner has not been denied effective assistance of counsel by virtue of this alleged failure.

39. Petitioner's second alleged ground is also disposed of by reference to the second prong of the *Strickland* test. Assuming trial counsel failed to answer Petitioner's questions regarding the initial interview and certain witnesses, Petitioner has failed to show that the underlying proceedings would have been different as a result.

40. Finally, Petitioner asserts that trial counsel failed to "obtain exculpatory evidence and make proper objections when asked to inquire about those first interviews since conviction." Although Petitioner fails to identify what "exculpatory evidence" exists, he appears to be under the belief that an investigation following the earlier 1989 allegations cleared him of any wrongdoing. This is simply not true. Following revelation of E.C.H.'s molestation, the prosecutor and E.C.H.'s mother jointly decided not to prosecute. (Trial Tr., Vol. 1, p. 158.) This was based on a lack of physical evidence and the likelihood that a jury could believe E.C.H. misinterpreted the touching. Following the identification of an additional victim, however, the State believed that it had enough evidence to obtain a conviction. Accordingly, this claim also fails by reference to the second prong of *Strickland* as Petitioner mistakenly believes that exculpatory evidence following the initial interview exists. Failure to obtain evidence that does not exist not only is not "deficient under an objective standard of reasonableness," but also cannot alter the result of the proceedings.

**b.** **Failure to Move to Dismiss Counts One through Four of the Indictment Due to Pre-Indictment Delay / Failure to Move for Hearing on Pre-Indictment Delay / Court's Failure to Provide Hearing on Pre-Indictment Delay Sua Sponte**

41. Petitioner also asserts that trial counsel was ineffective for failing to move to dismiss counts one through four of the indictment due to pre-indictment delay. Although the prosecuting attorney was aware of the events alleged in these counts in 1990, no prosecution was brought nor "did the state seek to preserve any of the 'forensic evidence' of the alleged victim or any of the 'treatment records.'"

42. In that same vein, Petitioner also alleges that his trial counsel was ineffective for failing to move the court for a hearing on the approximate seventeen year pre-indictment delay. Petitioner further argues that the trial court committed plain error by failing to conduct an evidentiary hearing on the pre-indictment delay sua sponte.

43. At the omnibus hearing held on September 9, 2011, in this matter, Petitioner's trial counsel, Alvin Gurganus, appeared to testify. He agreed that "pre-trial delay is something that [he] actively considered and actively analyzed, as to whether or not it would be a legitimate ground in [Petitioner's] case." (Sept. 9, 2011, Omnibus Hr'g Tr., p. 32.) Mr. Gurganus testified that he recalled discussing the pre-indictment delay with his partner, Janet Williamson. *Id.* at p. 12-13. Ms. Williamson related to Mr. Gurganus that she had a case in front of Judge Swope, the Judge that tried the underlying criminal matter, involving pre-indictment delay. *Id.* at p. 13. Ms. Williamson's motion relative to the pre-indictment delay was denied, however. *Id.*

44. Accordingly, Mr. Gurganus resolved to focus on other ways to address any prejudice resulting from the delay in indicting Petitioner following the 1989 charges. Mr. Gurganus agreed that he "cut to the chase as to what [he] believed the prejudice would have been, in regards to the delay[.]" *Id.* at p. 32.

Page 46

12

45. In attempting to remedy this prejudice Mr. Gurganus believed resulted from the pre-trial delay, specifically the loss of records, he filed a motion in limine and objected repeatedly during trial. *Id.* at p. 33. After careful consideration, Mr. Gurganus "just didn't deem the delay, the time, as being an argument that would win." *Id.* at p. 34.

46.

> In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

Syl. pt. 2, *State v. Frye*, 221 W. Va. 154, 670 S.E.2d 574 (2006.)

47. Further, "[w]here a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused." *Id.* at syl. pt. 3.

48. In light of all the circumstances, this Court cannot find that Mr. Gurganus's actions and omissions were "outside the broad range of professionally competent assistance." Mr. Gurganus considered the possibility of pre-indictment delay. He moved to sever the charges, moved in limine to prohibit testimony concerning certain lost records, and made several objections regarding the lost evidence during trial. In other words, his performance was the result of "strategy, tactics and arguable courses of action," and this Court deems it effectively assistive of Petitioner's interests.

49. Petitioner also claims that the trial court's failure to conduct an evidentiary hearing on the pre-indictment delay amounts to plain error. "Plain error is usually defined as



13

error that is so obvious that failure to notice it would seriously affect the fairness, integrity, or public reputation of the judicial proceedings and result in a miscarriage of justice." *Rash*, 226 W. Va. at 49, 697 S.E.2d at 85 (citation omitted). To succeed on such a claim, "there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Id.* (citation omitted).

50. Because the pre-indictment delay was not prejudicial in the first instance, the trial court's failure to conduct an evidentiary hearing does not amount to plain error.

c. **Failure to Appoint Co-Counsel**

51. Petitioner claims that the Court's failure to appoint co-counsel resulted in his receipt of ineffective assistance of counsel.

52. In *State v. Phelps*, 197 W. Va. 713, 478 S.E.2d 563 (1996), the appellant / defendant below appealed his first degree murder conviction and life imprisonment sentence. The appellant raised several grounds in that appeal, including that the trial court should have granted his request to have co-counsel appointed. *Id.*, 478 S.E.2d at 574. The court cited a string of cases from other jurisdictions finding no constitutional right to co-counsel, and it also noted the appellant's failure to draw the court's "attention to any authority holding there is a federal or state constitutional right to appointment of co-counsel or to authority showing he had a right to appointment of co-counsel under a statute or court rule. Our research has found no such authority." *Id.*, 478 S.E.2d at 574-75.

53. As the Supreme Court of Appeals of West Virginia has found no such constitutional right to the appointment of co-counsel, this ground is not properly asserted in a petition for a writ of habeas corpus, and Petitioner is denied relief on this ground. *See State ex rel. Farmer v. McBride*, 224 W. Va. 469, 479, 686 S.E.2d 609, 619 (2009) ("Habeas corpus

serves as a collateral attack upon a conviction under the claim that the conviction was obtained in violation of the state or federal constitution."); *State ex rel. Crupe v. Yardley*, 213 W. Va. 335, 338, 582 S.E.2d 782, 785 (2003) ("Traditionally, we have held that habeas corpus is not a substitute for an appeal and that a showing of error of a constitutional dimension is required in order to set aside a criminal conviction in a collateral attack by writ of habeas corpus.").

### d.     Prosecutorial Overmatch

54.     Finally, Petitioner claims that his trial counsel's inexperience with child sexual abuse claims coupled with the prosecutor's "extensive experience" handling such matters resulted in a "prosecutorial overmatch" and denied him effective assistance of counsel.

55.     "The gravamen of any 'prosecutorial overmatch' claim is proof of ineffectiveness of counsel as determined by reference to the trial record." Syl. pt. 1, *Acord v. Hedrick*, 176 W. Va. 154, 342 S.E.2d 120 (1986). "A mere imbalance between defense counsel and prosecution does not invalidate a criminal trial." *Id.* at 157, 342 S.E.2d at 123. Further, "defense counsel's inexperience alone is not enough to prove 'overmatch.'" *Id.* In *Acord*, the court found that "Mr. Acord has not shown that he has been the victim of ineffective assistance [of] counsel much less the victim of 'prosecutorial overmatch.'" *Id.* at 158, 342 S.E.2d at 123.

56.     Similarly, Petitioner has advanced no theory as to how the alleged imbalance between trial counsel and the prosecution resulted in ineffectiveness of counsel. Petitioner merely claims that there was an "imbalance between defense counsel and prosecution" and that defense counsel was less experienced than the prosecution. This is insufficient to establish "prosecutorial overmatch," and this claim fails.

57.     For all of these reasons, Petitioner is not entitled to relief on his ineffective assistance of counsel claims.

## VI.   Failure to Preserve Forensic Evidence

### a.   Due Process Violation

58.   Petitioner asserts that the pre-indictment delay resulted in the loss / non-preservation of E.H.'s psychological treatment notes from Southern Highlands as well as the "forensic interview of the alleged victim," taken sometime in 1990. Petitioner argues that this failure denied him an opportunity for a "taint hearing."

59.   He also claims that the denial of his "access to reports / records / videos / audios of the initial interview" amounts to a Due Process violation. Consideration of whether the failure to preserve evidence is violative of a petitioner's rights, Due Process or otherwise, is governed by the standard set forth below. *See State v. Paynter*, 206 W. Va. 521, 526 S.E.2d 43 (1999); *State v. Morris*, 227 W. Va. 76, 705 S.E.2d 583 (2010).

60.

> When the State had or should have had evidence requested by a criminal defendant but the evidence no longer exists when the defendant seeks its production, a trial court must determine (1) whether the requested material, if in the possession of the State at the time of the defendant's request for it, would have been subject to disclosure under either *West Virginia Rule of Criminal Procedure* 16 or case law; (2) whether the State had a duty to preserve the material; and (3) if the State did have a duty to preserve the material, whether the duty was breached and what consequences should flow from the breach. In determining what consequences should flow from the State's breach of its duty to preserve evidence, a trial court should consider (1) the degree of negligence or bad faith involved; (2) the importance of the missing evidence considering the probative value and reliability of secondary or substitute evidence that remains available; and (3) the sufficiency of the other evidence produced at trial to sustain the conviction.

*State v. Morris*, 227 W. Va. 76, 83, 705 S.E.2d 583, 590 (2010) (citation omitted).

61.     The *Morris* Court found that the State owed no duty to preserve the defendant's vehicle, which he was allegedly driving while intoxicated and which was involved in a fatal accident, because the State never possessed the vehicle. *Id.*

62.     Here, too, the State never possessed the items Petitioner accuses it of failing to preserve. Thus, the State had no duty to preserve the evidence, and Petitioner's request for relief on this ground is denied.

63.     In *State v. Lanham*, 219 W. Va. 710, 639 S.E.2d 802 (2006), the court considered the State's duty to preserve evidence. The appellant in that case argued that his conviction should be reversed because of the State's alleged destruction of potentially exculpatory evidence, namely the trailer in which his alleged victim was murdered. *Id.* at 713, 639 S.E.2d at 805. The appellant argued that the trailer should have been preserved to study blood spatter patterns, bullet holes, and other damage. *Id.*

64.     In affirming the appellant's conviction, the court noted that

> there was no scientific test that implicated the appellant. Moreover, the State did not rely on a missing piece of evidence, like the blood sample in *Thomas*, or the couch in *Osakalumi*, to convict the appellant. Instead, the State relied on eyewitness testimony that clearly indicated that the appellant was at the crime scene acting in a belligerent and threatening manner. . . . During the trial, the appellant was able to cross-examine every witness who implicated him in the burglary of the Moore trailer in order to reveal any facts that may have exonerated him. . . . The jury heard all of the evidence and convicted the appellant of burglary and felony-murder due to the fact that a homicide occurred during the burglary.

*Id.* at 715, 639 S.E.2d at 807.

65.     Even assuming the State owed a duty to preserve the evidence in his case, Petitioner's claim still fails. As in *Lanham*, the victims and their mental health treatment providers offered testimony and were subject to cross-examination. The State did not rely on

missing evidence in obtaining a conviction. The jury heard and considered this evidence, and it convicted Petitioner.

66.     Moreover, no negligence or bad faith on the State's part was involved in the loss of the evidence, which is a conclusion also drawn by the Supreme Court of Appeals of West Virginia in affirming Petitioner's conviction. *Rash*, 226 W. Va. at 49, 697 S.E.2d at 85 ("The record reveals that the treatment notes were no longer in existence, at no fault of the alleged victim or the State."). Accordingly, this Court finds that, even if the State had a duty to preserve evidence and it breached that duty, Petitioner is still not entitled to relief.

**b.     Denial of Taint Hearing**

67.     Petitioner also argues that the State's failure to preserve evidence resulted in his denial of a "taint hearing." Petitioner relies on *State v. Smith*, 225 W. Va. 706, 696 S.E.2d 8 (2010), which in turn considered the applicability of New Jersey's *State v. Michaels*, 136 N.J. 299, 642 A.2d 1327 (1994) in West Virginia. *Michaels* dealt with child sexual abuse charges and established a procedure for reviewing the reliability of testimony from child witnesses.

68.     The Supreme Court of Appeals of West Virginia noted that the *Michaels* case found that "'[t]he interrogations undertaken in the course of [that] case utilized most, if not all, of the practices that are disfavored or condemned by experts, law enforcement authorities and government agencies.'" *Smith*, 225 W. Va. at 710, 696 S.E.2d at 12 (citation omitted). "[T]he circumstances of *Michaels* were extreme and flagrant by any reasonable standards of reliability." *Id.*

> Given this overwhelming evidence, the *Michaels* Court agreed with its Appellate Division that the interviews of the children were highly improper and employed coercive and unduly suggestive methods. The *Michaels* Court specifically found that 'a substantial likelihood exists that the children's recollection of past events was both stimulated and materially influenced by that course of questioning.'



*Id.* at 711, 696 S.E.2d at 13 (citation omitted). Accordingly, the *Michaels* Court concluded that a hearing must be held to determine whether the "improper interrogations so infected the ability of the children to recall the alleged abuse events that their pretrial statements and in-court testimony based on that recollection are unreliable and should not be admitted into evidence." *Id.* (citation omitted).

69.     The *Smith* Court, however, found distinguishing factors between that case and *Michaels*. First, in *Michaels*, "the complaining witnesses were all preschoolers, whereas B.S. [in the *Smith* case], the first granddaughter to come forward against the appellant was just under twelve years old, while the second child to make sexual abuse allegations against the appellant, N.S., was fifteen years old." *Id.* Additionally, B.S.'s initial statement was spontaneous, and she recounted the same facts to several others. *Id.* Similarly, N.S. reported the molestation "after her mother asked her whether she had something to say about her grandfather[,]" whereas the potential victims / witnesses in *Michaels* had been bribed or coerced, thus affecting the content of their statements. *Id.* Further distinguishing the *Michaels* case, the *Smith* Court noted that

> the record is not replete with evidence that the victims were asked blatantly leading questions, the victims were not re-interviewed at the urging of their parents, and the victims were not subjected to repeated, almost incessant, interrogation. As such, the appellant's contention that his situation is analogous to the facts of *Michaels* is completely without merit.

*Id.* at 712, 696 S.E.2d at 14.

70.     Additionally, the *Smith* Court noted that the majority of jurisdictions that considered *Michaels* declined to adopt its holding. *Id.* Ultimately, the court rejected the *Michaels* approach. *Id.* It concluded that

> the appellant does not suggest that the two victims lacked the capacity to see and recollect what happened to them. Instead, he claims that their

testimony is potentially the product of suggestive and leading questioning which may have planted false memories in their subconscious. Thus, the issue is not whether the victims are competent to testify; rather, the issue is whether their testimony is reliable. It is a matter of the credibility of the witnesses and this Court has long held that credibility determinations are made by the jury.

*Id.* at 713, 696 S.E.2d at 15. "[R]equiring circuit courts to hold pretrial taint hearings in every case involving a sexual abuse victim would necessarily lead to a host of new issues on appeal and would more than likely become an abused discovery tool for a defendant accused of such a crime." *Id.* at 714, 696 S.E.2d at 16. Instead, questions surrounding interviewers' techniques can be dealt with during cross-examination at trial. *Id.* In short, "assuming it otherwise meets the requirements of admissibility, the reliability of a child's testimony is properly a matter for assessment by the trier of fact who is charged with making determinations regarding the weight and credibility of such testimony." *Id.* Thus, the court affirmed the trial court's denial of the appellant's motion for a pretrial taint hearing. *Id.*

71. The same result follows in the instant matter. The facts found in *Smith* were extreme, and the Supreme Court of Appeals of West Virginia specifically rejected the notion that taint hearings are necessary in all cases alleging sexual abuse. Rather, cross-examination is the proper method of highlighting any questionable questioning techniques. The children in this matter were older than the preschoolers in *Smith*, their testimony was otherwise admissible, and their credibility was a matter for jury consideration. Petitioner was not entitled to a taint hearing, and his request for relief under this ground is denied.

## VII. Denial of Right to Speedy Trial

72. Petitioner claims that he was denied a speedy trial in 1989 and 1990 regarding the 1989 allegations, particularly because records related to this incident were missing at the time of his prosecution.

73. "The Sixth Amendment speedy trial right begins with the actual arrest of the defendant and will also be initiated where there has been no arrest, but formal charges have been brought by way of an indictment or information." Syl. pt. 5, *Jessie*, 225 W. Va. 21, 689 S.E.2d 21. "In those situations where there has been no arrest or indictment, the Sixth Amendment right to a speedy trial is not implicated." *Id.* at syl. pt. 7.

74. Petitioner claims only that he did not receive a speedy trial with respect to the 1989 allegations. As stated above, however, Petitioner's Sixth Amendment speedy trial right did not manifest until he was indicted. As Petitioner makes no similar claim with respect to the 2001 and 2002 allegations, it is clear that Petitioner merely complains again about pre-indictment delay as opposed to any actual denial of his right to a speedy trial following indictment. Accordingly, this ground fails, and Petitioner is not entitled to relief based upon it.

## VIII. Denial of a Preliminary Hearing

75. Finally, Petitioner claims that he was denied a preliminary hearing in 1989 and 1990 when the prosecution was aware of allegations surrounding Petitioner at that time, and he was also denied a preliminary hearing in 2005.

76. West Virginia's Supreme Court of Appeals "has consistently recognized that a preliminary hearing is a not a federal constitutional mandate, and that there is nothing in our State *Constitution* which would give an independent state constitutional right to a preliminary hearing." *Peyatt v. Kopp*, 189 W. Va. 114, 116, 428 S.E.2d 535, 537 (1993) (citing syl. pt. 1, *State ex rel. Rowe v. Ferguson*, 165 W. Va. 183, 268 S.E.2d 45 (1980); syl. pt. 1, *Gibson v. McKenzie*, 163 W. Va. 615, 259 S.E.2d 616 (1979)).

77. Because habeas corpus proceedings are designed to address potential violations of constitutional rights, this ground fails. *See McBride*, 224 W. Va. at 479, 686 S.E.2d at 619; *Yardley*, 213 W. Va. at 338, 582 S.E.2d at 785.

78. In conclusion, this Court DENIES Petitioner's Petition for a Writ of Habeas Corpus.

79. This Court directs that the Circuit Clerk distribute attested copies of this Order to the following:

Kelli L. Harshbarger
Assistant Prosecutor
20 Scott Street
Princeton, West Virginia 24740

Phillip A. Scantlebury
205 S. Walker Street
Princeton, West Virginia 24740

ENTER: 3/30/12

_____
DAVID W. KNIGHT, JUDGE

THE FOREGOING IS AN ATTESTED COPY OF A DOCUMENT
ENTERED IN THIS OFFICE ON THE ___30th___ DAY
OF ___March___ 20 ___12___
DATED THIS ___30th___ DAY OF ___March___
20 ___12___

JULIE BALL, CLERK OF THE
CIRCUIT COURT OF MERCER COUNTY WV
BY _____
HER DEPUTY

page 56

22